4:40pm
005299

ORIGINAL

FILED
AUG 2 2 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, v. UNITED STATES, Defendant. | No. 06-599 C<br>BID PROTEST |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF TO PREVENT UNLAWFUL OVERRIDE OF CICA STAY

Automation Technologies, Inc. ("ATI"), by counsel, states for its complaint against the United States as follows:

## NATURE OF THE CASE

1. Plaintiff ATI brings this action to set aside and enjoin the government's decision to override the mandatory stay imposed by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3)(A), when ATI filed a post-award bid protest with the Government Accountability Office ("GAO") challenging the government's award of a contract to Digital Technologies, Inc. ("DTI").

2. The procuring agency awarded the contract, valued at up to $49.5 million over five years, under a negotiated "best value" solicitation calling for ongoing computer hardware maintenance services that ATI is currently performing under a contract that runs through December 2006 and includes options for further periods of performance.

3. The procuring agency based its override decision on the "best interests" of the United States (*see* 31 U.S.C. § 3553(d)(3)(C)(i)(I)), but the decision is arbitrary, capricious, and

contrary to law because it purports to justify the override based solely and exclusively on projected cost savings under the contract with DTI, which, even if it considered all of the relevant costs and other factors (which it did not), is not a legally sufficient reason for CBP to override the CICA stay and frustrate the intent of Congress to ensure that GAO be able to conduct meaningful reviews of federal procurement actions.

**JURISDICTION**

4. This Court has jurisdiction over this matter under section 1491(b)(1) of the Tucker Act. *See Ramcor Services Group, Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999); *PGBA, LLC v. United States*, 57 Fed. Cl. 655 (Fed. Cl. 2003).

5. The remedies that ATI seeks are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(1), and by the Declaratory Judgment Act, 28 U.S.C. § 2201 – 2202.

**PARTIES**

6. Plaintiff ATI is a professional services firm providing information technology ("IT") consulting and support services to federal government and commercial customers. ATI is a Delaware corporation with its principal place of business at 1950 Old Gallows Road, Suite 350, Vienna, Virginia 22182. ATI is the incumbent contractor for the work called for by the underlying solicitation in the GAO bid protest, and has been performing that work since July 2004, when it took over the work from DTI, the previous incumbent contractor.

7. Defendant is the United States of America, acting by and through the Department of Homeland Security, Bureau of Customs and Border Protection ("CBP"), which is the procuring agency. CBP's contracting officer is Thomas M. Uberto, whose address is Department of Homeland Security, Customs & Border Protection, Office of Procurement – Room 1310 NP, 1300 Pennsylvania Ave., N.W., Washington, D.C. 20229.

## STATEMENT OF FACTS

### A. The Solicitation and Initial Award to ATI

8. The contract at issue in the GAO bid protest relates to CBP's data center, located in Springfield, Virginia. The center is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time. On or about September 30, 2005, CBP issued an unrestricted RFP (No. HSBP10-05-R-0541) for on-site preventive and remedial maintenance of the mainframe computers, storage units and other peripheral equipment located at the center.

9. The RFP contemplated the award of a fixed-unit-price, indefinite-delivery/indefinite-quantity ("IDIQ") contract, with a guaranteed minimum of $2,500 worth of orders and annual ordering ceilings of $9.9 million for each of the base period and four option periods, for a total contract ceiling of $49.5 million. *See* RFP, Amend. 0002, at 3.

10. Plaintiff ATI is the incumbent contractor for this work, having performed this work thus far under two different contracts. ATI's first contract ran from July 2004 through December 2005. The second contract (No. HSBP10-06-C-1143), under which ATI is currently performing the work, runs from January 1, 2006 through December 31, 2006, but includes options allowing CBP to extend the contract for up to five years. ATI has at all times continued to perform the work specified by its contracts and continues to do so today. At the present time, however, ATI's current task orders run only through August 31, a mere nine days away.

11. The RFP stated that CBP would award the contract on a "best value" basis, which would be determined through the use of a technical/price tradeoff analysis. RFP § A.40. The RFP established an evaluation scheme with three evaluation factors: technical, past performance, and price, in descending order of importance. Indeed, the RFP stated that the

technical merits of an offeror's proposal would be "significantly more important" than its past performance, and that past performance in turn would be "significantly more important" than price. To emphasize CBP's priorities, the RFP reiterated that CBP was more interested in quality than in price, expressly stating that:

> [t]he Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price.

*Id.* § A.41.

12. In October 2005, ATI and two other offerors submitted proposals in response to the RFP. Following discussions, the three offerors submitted final proposal revisions ("FPRs").

13. As referred to above, in late December 2005, CBP awarded ATI a resulting contract (No. HSBP10-06-C-1143). This is the contract with the base period that runs through December 31, 2006, under which ATI is currently performing.

**B. DTI's Bid Protests and the Re-Opened Competition**

14. About a week after CBP awarded the contract to ATI, DTI filed a bid protest with CBP, in which it challenged the suggested pricing format that CBP had included in the RFP and raised related allegations. CBP dismissed the protest, in part, as untimely and denied it, in part, on the merits.

15. Following CBP's decision, DTI apparently filed a bid protest at GAO. In response to this protest, CBP apparently decided to take corrective action, as a result of which GAO dismissed the protest as academic. *See Digital Technologies, Inc.*, B-297851 (Mar. 23, 2006) (notice of dismissal).

16. On March 31, 2006, CBP issued a solicitation amendment in which it re-opened the competition and called for the submission of revised price proposals. *See* RFP, Amend. 0003

(Mar. 31, 2006). The amendment provided new pricing formats substantially identical to those that ATI had earlier submitted in response to the solicitation. Pursuant to these formats, CBP was to evaluate price based on a sample mix of work.

17. The pricing formats also disclosed to the offerors the identities of ATI's OEM partners, such as IBM, ViON, and Fujitsu, as well as the equipment that each partner was maintaining. *See* RFP, Amend. 0003, Attach. C.

18. On April 6, CBP issued a further amendment in which it disclosed ATI's proposed pricing, on a line-item by line-item basis. *See* RFP, Amend. 0004, at 3 (Apr. 6, 2006).

19. On April 11, ATI timely submitted a revised price proposal.

## C. The Notice of Award to DTI and ATI's Debriefing

20. On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26.

21. On Monday, August 7, ATI timely requested a debriefing from CBP, which CBP supplied in written form later that day. The debriefing, little more than a single page long, indicated that ATI's combined technical and past performance score was 85%, while DTI's combined score was only 76% (representing a difference of almost 12%). The debriefing also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%). *See* CBP Debriefing Letter (Aug. 7, 2006) (Exhibit 1 to accompanying memorandum in support of motions for temporary and preliminary injunctive relief).

22. Despite the RFP's emphasis on technical merit and past performance, the debriefing provided by CBP explained the tradeoff decision in little more than a single sentence:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

CBP Debriefing Letter at 2 (Aug. 7, 2006). The debriefing provided no further explanation of the tradeoff analysis or source selection decision.

**D. ATI's GAO Bid Protest and the Resulting CICA Stay**

23. On Friday, August 11, within five days of a timely requested and required debriefing (*see* 31 U.S.C. § 3553(d)(4)), ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. GAO notified CBP of the protest later that same day, thereby triggering the automatic stay. *See* 31 U.S.C. § 3553(d)(3)(A).

24. In its GAO protest (docketed as B-298618), ATI has challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a technically-acceptable, low-cost procurement) and its flawed evaluations of the offerors' technical proposals and past performance.

25. GAO's decision in the bid protest is due no later than November 20, approximately 90 days hence.

**E. The Agency's Decision to Override the CICA Stay**

26. On the afternoon of Thursday, August 17, 2006, in fulfillment of a statutory precondition to implementing its override decision, CBP notified GAO that it had determined that it was in the "best interests" of the United States to override the automatic stay. *See* 31 U.S.C. § 3553(d)(3)(C)(i)(I) and (C)(ii) ("best interests" override authority and GAO pre-notification requirement).

27. On Friday, August 18, ATI's counsel requested, and CBP's counsel furnished, a copy of the agency's override memorandum. *See* CBP Override Determination and Findings ("D&F") (Exhibit 2 hereto).

28. Apparently in the belief that DTI had begun to perform the new contract, the drafter of the override memorandum purported to justify the override decision on the grounds that:

> [r]esumption of contract performance [by DTI] will result in significant savings to the Government, and therefore is in the best interests of the United States.

Override D&F, at 2 (Ex. 2).

29. The override memorandum does not offer any rationale for the "best interests" determination other than prospective cost savings, nor does it invoke the only other possible basis for an override, the "urgent and compelling circumstances" standard. *See generally id.*

30. The override memorandum incorporates a table setting forth prospective cost savings, as calculated by CBP for the sample tasks in the RFP, on a year-by-year basis for the full five-year period of performance of the new contract. Nowhere does the memorandum break out or identify the prospective cost savings for the next three months, which is the only relevant time frame, since GAO will have decided the bid protest by then.

31. The override memorandum also did not consider the potential costs to CBP or disruption to its data center operations of terminating DTI's contract and retransitioning the work back to ATI (or to another offeror) in the event that ATI prevails in its GAO protest. The override memorandum disregarded this possibility, apparently based on the agency's view that GAO will resolve the protest entirely in its favor. *See generally id.*

32. As an example, the override memorandum discounted ATI's challenges to the technical evaluations as untimely on the grounds that CBP had disclosed the offerors' combined

technical and past performance scores in a solicitation amendment issued on or about April 6, 2006. The override memorandum overlooks the fact that ATI had no basis to protest the scoring at that time, since the scoring had not yet caused it any prejudice. At that point, CBP still could have awarded the contract to ATI. It was not until several months later that CBP awarded the contract not to ATI but to DTI, at which point ATI timely protested.

33. The override memorandum also failed to consider the public interest in the enforcement, by means of the GAO bid protest process and the automatic stay, of the procurement laws. *See generally id.*

34. The override memorandum also failed to address the significant risk to CBP that DTI will not, in fact, be ready to perform the work with cleared personnel on September 1, 2006. As with the old contract, the new contract requires that contractor personnel pass a background investigation before commencing work. ATI understands that DTI only obtained the necessary paperwork on Friday, August 18, 2006, and that CBP has a backlog of several months in processing security clearance requests.

**F. The Impending Transition to DTI**

35. If CBP's override decision is allowed to stand, DTI may begin on-site performance as early as September 1, 2006, following the expiration of ATI's existing task orders on August 31, *less than ten days away.*

36. If ATI is forced to discontinue performance and terminate its contracts with its OEM partners, its reputation and relationships with its OEM partners will suffer, it will lose its legitimate competitive advantage as the incumbent in any recompetition recommended by GAO, DTI will gain an undue competitive advantage as the new incumbent in any recompetition, and ATI will lose profits during any interruption of its performance. Additionally, ATI may be liable

to one of its OEM partners for the current CBP contract, because the vendor requires 30 days advance notice of termination and CBP has not given ATI advance notice that its current contract performance responsibilities will end in 30 days. Also, ATI could lose its CBP data center project manager, who is a valuable asset to ATI, especially in connection with the CBP contract. All of these are injuries for which federal procurement law provides no adequate remedy at law.

**COUNT I**
**(Unlawful Override of CICA Stay)**

37. Plaintiff ATI incorporates by reference all preceding paragraphs.

38. CBP's decision to override the CICA stay is arbitrary, capricious, and not in accordance with law.

39. Plaintiff ATI has suffered injury and will continue to suffer injury because of CBP's arbitrary, capricious, and unlawful decision to override the CICA stay. ATI has no adequate remedy at law for this injury.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff ATI requests that this Court:

1. Enter a *declaratory judgment* holding that CBP's decision to override the CICA stay is arbitrary, capricious, or otherwise not in accordance with law, setting it aside, and reinstating the CICA stay *de jure*;

2. Issue a *temporary restraining order* prohibiting CBP from overriding the CICA stay of performance of DTI's contract or otherwise permitting DTI to commence or continue performing the new contract.

3. Issue a *preliminary injunction* prohibiting CBP from overriding the CICA stay of performance of DTI's contract or otherwise permitting DTI to commence or continue performing the new contract, until such time as the Court enters a final judgment on the merits of this case or

ATI's GAO bid protest and any subsequent recompetition or other corrective action has been completed, whichever occurs first;

4. Issue a *permanent injunction* prohibiting CBP from overriding the CICA stay of performance of DTI's contract or otherwise permitting DTI to proceed to perform the new contract, until such time as GAO has resolved ATI's bid protest, CBP has accomplished any subsequent recompetition or other corrective action, and any subsequent review actions have been completed.

5. Award plaintiff ATI its costs, including reasonable attorneys' fees and expenses; and

6. Grant plaintiff ATI such other or further relief that the Court deems just and proper in the circumstances.

Dated: August 22, 2006

Respectfully submitted,

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900