ORIGINAL

FILED
AUG 2 2 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AUTOMATION TECHNOLOGIES, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 06-599 C

BID PROTEST

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT UNLAWFUL OVERRIDE OF CICA STAY**

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

Dated: August 22, 2006

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

QUESTION PRESENTED ..... 2

STATUTORY PROVISIONS ..... 2

STATEMENT OF THE CASE ..... 3

A. Plaintiff ATI and Its Existing Contract with the Agency ..... 3

B. The Solicitation and Initial Award to ATI ..... 4

C. DTI's Bid Protests and the Re-Opened Competition ..... 5

D. The Notice of Award to DTI and ATI's Debriefing ..... 6

E. ATI's GAO Bid Protest and the Resulting CICA Stay ..... 6

F. The Agency's Decision to Override the CICA Stay ..... 7

G. The Impending Transition to DTI ..... 8

ARGUMENT ..... 9

I. UNDER THE TRADITIONAL FOUR-PART TEST, PLAINTIFF ATI IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION TO PREVENT THE PROCURING AGENCY FROM CARRYING OUT ITS UNLAWFUL OVERRIDE DECISION ..... 9

A. Plaintiff ATI Is Likely to Prevail on the Merits of This Override Case ..... 10

1. CBP's Override Decision Is Based Solely on the Prospect of Cost Savings Under DTI's Contract, but the Prospect of Cost Savings Is Not a Legally Sufficient Basis for an Override Decision, Particularly in a Best-Value Procurement ..... 11

2. CBP's Override Decision Fails to Identify or Consider the Prospective Savings for the Relevant Time Frame, Which Is Only the Next Three Months, Not the Next Year or the Next Five Years, as the Decision Suggests ..... 14

3. CBP's Override Decision Fails to Adequately Articulate or Evaluate the Risks of Incurring Offsetting Costs or Disruption in the Event that GAO Sustains ATI's Bid Protest .......... 15

4. CBP's Override Decision Fails to Consider Whether Overriding the Stay Would Serve or Undermine the Public's Interest in Promoting CICA's Goal of Competition .......... 18

B. Absent Temporary or Preliminary Injunctive Relief, Plaintiff ATI Will Suffer Irreparable Harm .......... 18

C. Temporary or Preliminary Injunctive Relief Will Not Substantially Harm the Government and May in Fact Benefit the Government .......... 19

D. Temporary or Preliminary Injunctive Relief Will Serve the Public's Interest in Proper Enforcement of the Procurement Laws .......... 20

CONCLUSION AND RELIEF REQUESTED .......... 21

EXHIBITS

1. CBP Debriefing Letter (Aug. 7, 2006)

2. CBP Override Determination and Findings ("D&F") (Aug. 17, 2006)

3. Declaration of Paul Fauser (Aug. 22, 2006)

# TABLE OF AUTHORITIES

Cases

*Advanced Systems Development, Inc. v. United States*,
__ Fed. Cl. ___, 2006 WL 2130548 (July 28, 2006) .......... 9, 10, 13, 14, 17

*Altos Federal Group, Inc. v. United States*,
60 Fed. Cl. 832, 833-34 (2004) .......... 20

*Chapman Law Firm Co. v. United States*,
62 Fed. Cl. 464, 466 (2004) .......... 9-10, 13

*CIGNA Government Services, LLC v. United States*,
70 Fed. Cl. 100 (2006) .......... 3, 10, 13, 17, 18, 19

*Delbert Wheeler Constr., Inc. v. United States*,
39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1997) .......... 10

*ES-KO, Inc. v. United States*,
44 Fed. Cl. 429 (1999) .......... 21

*FMC Corp. v. United States*,
3 F.3d 424 (Fed. Cir. 1993) .......... 10

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)) .......... 15

*Overstreet Elec. Co. v. United States*,
47 Fed. Cl. 728, 744 (2000) .......... 19

*PGBA, LLC v. United States*,
57 Fed. Cl. 655 (2003) .......... 11, 12, 14, 17, 18, 20, 21

*University Research Co., LLC v. United States*,
65 Fed. Cl. 500 (2005) .......... 12, 14

*Zenith Radio v. United States*,
710 F.2d 806, 809 (Fed. Cir. 1983) .......... 10

Statutes and Regulations

5 U.S.C. § 706 .......... 10

28 U.S. C. § 1491 .......... 10

31 U.S.C. § 3553 ........ 2, 3, 6, 7, 12

4 C.F.R. § 21.2(a)(2) ........ 16

FAR 15.506 ........ 16

Other Authorities

H.R. Conf. Rep. No. 98-861 at 1436, U.S.C.C.A.N. 1984, at 697, 1080-81 ........ 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, | ) | No. ____________ |
| v. | ) | |
| UNITED STATES, Defendant. | ) | BID PROTEST |

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT UNLAWFUL OVERRIDE OF CICA STAY**

## INTRODUCTION

Plaintiff Automation Technologies, Inc. ("ATI") seeks to temporarily restrain and preliminarily enjoin the U.S. Department of Homeland Security, Bureau of Customs and Border Protection ("CBP"), from implementing its unlawful decision to override the statutory stay of contract performance imposed by the Competition in Contracting Act ("CICA"). This stay was triggered when ATI filed a post-award bid protest with the Government Accountability Office ("GAO") challenging the government's award of a contract to Digital Technologies, Inc. ("DTI").

CBP awarded the contract, valued at up to $49.5 million over five years, under a negotiated "best value" solicitation calling for ongoing computer hardware maintenance services that ATI is currently performing under a contract that runs through December 2006 and includes options for further periods of performance.

The procuring agency based its override decision on the "best interests" of the United States, but the decision is arbitrary, capricious, and contrary to law because it purports to justify the override based solely and exclusively on projected cost savings under the contract with DTI, which, even if it considered all of the relevant costs and other factors (which it did not), is not a legally sufficient reason for CBP to override the CICA stay and frustrate the intent of Congress to ensure that GAO be able to conduct meaningful reviews of federal procurement actions.

## QUESTION PRESENTED

1. Whether plaintiff ATI is entitled to a temporary restraining order (pending the issuance of a preliminary injunction) and a preliminary injunction (pending the entry of final judgment in this case) to prevent the procuring agency from carrying out its arbitrary, capricious and otherwise unlawful decision to override the stay of contract performance imposed by CICA when ATI timely filed a bid protest at GAO challenging the agency's award of a contract to another offeror?

## STATUTORY PROVISIONS

When a disappointed offeror files a bid protest at GAO within the statutorily prescribed time frame, CICA imposes a mandatory stay of contract performance. 31 U.S.C. § 3553(d)(3)(A). Where a contractor has already begun performance by the time the stay is triggered, the agency must "immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract." 31 U.S.C. § 3553(d)(3)(A)(ii). In general, the agency may not authorize the contractor to resume performance while the protest is pending. 31 U.S.C. § 3553(d)(3)(B).

As an exception, the head of the agency's contracting activity may override the stay upon a written determination that:

> (i) performance of the contract is in the *best interests* of the United States; or
>
> (ii) *urgent and compelling circumstances* that significantly affect the interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.

31 U.S.C. § 3553(d)(3)(C)(i) (emphasis added). *See also CIGNA Government Services, LLC v. United States*, 70 Fed. Cl. 100, 110 ("CICA's Automatic Stay and Override Provisions").

## STATEMENT OF THE CASE[1]

### A. Plaintiff ATI and Its Existing Contract with the Agency

Plaintiff ATI, headquartered in Vienna, Virginia, is a professional services firm providing information technology ("IT") consulting and support services to federal government and commercial customers. ATI is the incumbent contractor for the work called for by the new contract at issue in its GAO bid protest. ATI has been performing this work since July 2004, when it took over from DTI, the previous incumbent contractor. ATI's current contract runs from January 1, 2006 through December 31, 2006, but includes options allowing CBP to extend the contract for up to five years. ATI has at all times continued to perform the work specified by its contract and continues to do so today. At the present time, however, ATI's current task orders run only through August 31, a mere *nine days away*.

[1] The Statement of the Case draws generally upon the attached Declaration of Paul Fauser (Aug. 22, 2006) ("Fauser Decl.") (Exhibit 3 hereto).

## B. The Solicitation and Initial Award to ATI

The contract at issue in the GAO bid protest relates to CBP's data center, located in Springfield, Virginia. The center is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time. On or about September 30, 2005, CBP issued a request for proposals ("RFP"), No. HSBP10-05-R-0541, on an unrestricted basis for on-site preventive and remedial maintenance of the mainframe and distributed computer systems, storage units and other peripheral equipment located at the center.

The RFP contemplated the award of a fixed-unit-price, indefinite-delivery/indefinite-quantity ("IDIQ") contract, with a guaranteed minimum of $2,500 worth of orders and annual ordering ceilings of $9.9 million for each of the base period and four option periods, for a total contract ceiling of $49.5 million. *See* RFP, Amend. 0002, at 3.

The RFP stated that CBP would award the contract on a "best value" basis, which would be determined through the use of a technical/price tradeoff analysis. RFP § A.40. The RFP established an evaluation scheme with three evaluation factors: technical, past performance, and price, in descending order of importance. Indeed, the RFP stated that the technical merits of an offeror's proposal would be "significantly more important" than its past performance, and that past performance in turn would be "significantly more important" than price. To emphasize CBP's priorities, the RFP reiterated that CBP was more interested in quality than in price, expressly stating that:

> [t]he Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price.

*Id.* § A.41.

In October 2005, ATI and two other offerors submitted proposals in response to the RFP. Following discussions, the three offerors submitted final proposal revisions ("FPRs"). As indicated above, in late December 2005, CBP awarded a resulting contract to ATI. This contract runs through the end of December 2006, but includes options for another four years.

**C. DTI's Bid Protests and the Re-Opened Competition**

About a week after CBP awarded the contract to ATI, DTI filed a bid protest with CBP, in which it apparently challenged the suggested pricing format that CBP had included in the RFP and raised other pricing-related allegations. CBP dismissed the protest, in part, as untimely, and denied it, in part, on the merits.

Following CBP's decision, DTI apparently filed a bid protest at GAO. In response to this protest, CBP apparently decided to take corrective action, as a result of which GAO dismissed the protest as academic. *See Digital Technologies, Inc.*, B-297851 (Mar. 23, 2006) (notice of dismissal).

On March 31, 2006, CBP issued a solicitation amendment in which it re-opened the competition and called for the submission of revised price proposals. *See* RFP, Amend. 0003 (Mar. 31, 2006). The amendment provided new pricing formats substantially identical to those that ATI had earlier submitted in response to the solicitation. Pursuant to these formats, CBP was to evaluate price based on a sample mix of work. The pricing formats also disclosed to the offerors the identities of ATI's OEM partners, such as IBM, ViON, and Fujitsu, as well as the equipment that each of the partners was maintaining. On April 6, CBP issued a further amendment in which it disclosed ATI's proposed pricing, on a line-item by line-item basis. *See* RFP, Amend. 0004, at 3 (Apr. 6, 2006).

On April 11, ATI timely submitted a revised price proposal.

**D. The Notice of Award to DTI and ATI's Debriefing**

On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26.

On Monday, August 7, ATI timely requested a debriefing from CBP, which CBP supplied in written form later that day. The debriefing, little more than a single page long, indicated that ATI's combined technical and past performance score was 85%, while DTI's combined score was only 76% (representing a difference of almost 12%). The debriefing also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%). *See* CBP Debriefing Letter (Aug. 7, 2006) (Exhibit 1 hereto).

Despite the RFP's emphasis on technical merit and past performance, the debriefing provided by CBP explained the tradeoff decision in little more than a single sentence:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

*Id.* at 2 (Ex. 1). The debriefing provided no further explanation of the tradeoff analysis or source selection decision.

**E. ATI's GAO Bid Protest and the Resulting CICA Stay**

On Friday, August 11, within five days of a timely requested and required debriefing (*see* 31 U.S.C. § 3553(d)(4)), ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. GAO notified CBP of the protest later that same day, thereby triggering the automatic stay. *See* 31 U.S.C. § 3553(d)(3)(A)

In its GAO protest (No. B-298618), ATI has challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a

technically-acceptable, low-cost procurement) and its flawed evaluations of the offerors' technical proposals and past performance. GAO's decision in the bid protest is due no later than November 20, approximately 90 days hence.

**F. The Agency's Decision to Override the CICA Stay**

On the afternoon of Thursday, August 17, 2006, in fulfillment of a statutory precondition to implementing its override decision, CBP notified GAO that it had determined that it was in the "best interests" of the United States to override the automatic stay. *See* 31 U.S.C. § 3553(d)(3)(C)(i)(I) and (C)(ii) ("best interests" override authority and GAO pre-notification requirement).

On Friday, August 18, ATI's counsel requested, and CBP's counsel furnished, a copy of the agency's override memorandum. *See* CBP Override Determination and Findings ("D&F") (Aug. 17, 2006) (Exhibit 2 hereto).

Apparently in the belief that DTI had begun to perform the new contract, the drafter of the override memorandum purported to justify the override decision on the grounds that:

> [r]esumption of contract performance [by DTI] will result in significant *savings to the Government*, and therefore is in the best interests of the United States.

Override D&F, at 2 (emphasis added). The override memorandum does not offer any rationale for the "best interests" determination other than prospective cost savings, nor does it invoke the only other possible basis for an override, the "urgent and compelling circumstances" standard. *See generally id.*

In support of its sole rationale, the override memorandum incorporates a table setting forth the prospective cost savings, as calculated by CBP for the sample tasks in the RFP, on a year-by-year basis for the full five-year period of performance of the new contract. *See id.* at 2. Nowhere does the memorandum break out or identify the prospective cost savings *for the next*

*three months*, which is the only time frame that is relevant, since GAO will have decided the bid protest by then.

The override memorandum also does not consider the potential costs to CBP, or disruption to its data center operations, of terminating DTI's contract and retransitioning the work back to ATI (or another offeror) in the event that ATI prevails in its GAO protest. The override memorandum disregarded this possibility, apparently based on the agency's cheery belief that GAO will resolve the protest entirely in its favor. *See generally id.*

The override memorandum also failed to consider the public interest in the rigorous enforcement of federal procurement laws by means of the GAO bid protest process and the automatic stay. *See generally id.*

Additionally, the override memorandum failed to address the significant risk to CBP that DTI will not, in fact, be ready to perform the work with cleared personnel on September 1, 2006. As with the old contract, the new contract requires that contractor personnel pass a background investigation before commencing work. *See* RFP §§ A.16(c), A.25(C). ATI understands that DTI obtained the necessary paperwork only this past Friday, August 18, 2006, and that CBP has a backlog of several months in processing security clearance requests.

**G. The Impending Transition to DTI**

If CBP's override decision is allowed to stand, DTI may begin on-site performance as early as September 1, 2006, following the expiration of ATI's existing task orders on August 31, *less than ten days away.*

If ATI is forced to discontinue performance and terminate its contracts with its OEM partners, its reputation and relationships with them will suffer, it will lose its legitimate competitive advantage as the incumbent in any recompetition recommended by GAO, DTI will

gain an undue competitive advantage as the new incumbent in any recompetition, and ATI will lose profits during any interruption of its performance. Additionally, ATI may have some termination liability to one of its OEM partners for the current CBP contract, because its agreement requires 30 days advance notice of termination and CBP has not given ATI advance notice that its current contract performance responsibilities will end in 30 days. Also, ATI could lose its CBP data center project manager, who is a valuable asset to ATI, especially in connection with the CBP contract. *See* Fauser Decl. ¶ 29 (Ex. 3). For none of these injuries does ATI have an adequate remedy at law.

## ARGUMENT

### I. UNDER THE TRADITIONAL FOUR-PART TEST, PLAINTIFF ATI IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION TO PREVENT THE PROCURING AGENCY FROM CARRYING OUT ITS UNLAWFUL OVERRIDE DECISION

In determining whether to grant plaintiff ATI temporary and preliminary injunctive relief, the Court must consider four factors:

(1) whether ATI is likely to prevail on the merits;

(2) whether ATI is likely to suffer irreparable harm absent temporary and preliminary injunctive relief;

(3) whether granting such relief would substantially harm the government or any other parties;

(4) whether granting such relief would serve the public interest.

*Zenith Radio v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Delbert Wheeler Constr., Inc. v. United States*, 39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1997).[2]

---

[2] The injunctive relief factors do not apply to requests for a declaratory judgment invalidating the override of a CICA stay. *See Advanced Systems Development, Inc. v. United States*, ___ Fed. Cl. ___, 2006 WL 2130548, at *11 (Baskir, J.) (citing *Chapman Law Firm Co. v. United*
*(cont'd . . .)*

No one factor is dispositive, as any weakness in the showing with respect to one factor may be overborne by the strength of others. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

### A. Plaintiff ATI Is Likely to Prevail on the Merits of This Override Case

Plaintiff ATI is likely to prevail on the merits of its claim that the procuring agency's determination to override the CICA stay contravenes the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).[3]

Under those standards, the Court must overturn the procuring agency's override decision if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *CIGNA Government Services, LLC v. United States*, 70 Fed. Cl. 100, 109 (2006) (Williams, J.) (citing APA, 5 U.S.C. § 706(2)(A)). "In order to prevail, the protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Id.* at 109-10. An agency's override decision may lack a reasonable basis if the agency considered factors that were irrelevant or ignored factors that were relevant. *Id.* at 110 (citing *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 659 (2003)).

Under the foregoing standards, CBP's decision to override the CICA stay here as in the "best interests" of the United States is arbitrary, capricious and contrary to law.

---

*(. . . . cont'd)*
*States*, 65 Fed. Cl. 422, 424 (2005) (Merow, S.J.)), and *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 114 (2006) (Williams, J.) ("[b]ecause the declaratory judgment will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of injunctive relief"). Moreover, there is authority that CICA gives presumptive weight, in favor of plaintiffs, to the factors of irreparable harm and public interest. *See Advanced Systems Development*, 2006 WL 2130548, at *11.

[3] Although this override action does not arise under the APA, the APA provides the applicable standard of review for this Court. *See* 28 U.S.C. § 1491(b)(4) ("[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5").

As more fully described below, CBP predicated the override decision solely and exclusively on the prospective cost savings that it calculates it will gain as a result of allowing the new awardee, DTI, to proceed with contract performance – which is a legally insufficient ground. Even if prospective cost savings *were* a legally sufficient justification, the override decision does not identify or consider the prospective savings for the relevant time period, which is only the next three months and not the next year or the next five years, as the table in the override decision suggests. Additionally, the override decision fails to meaningfully consider the potential costs and disruption to the government in the event that GAO sustains ATI's bid protest, or the harm to the public interest in circumventing the automatic stay provision that Congress considered essential to preserving meaningful review by GAO of federal procurement actions.

**1. CBP's Override Decision Is Based Solely on the Prospect of Cost Savings Under DTI's Contract, but the Prospect of Cost Savings Is Not a Legally Sufficient Basis for an Override Decision, Particularly in a Best-Value Procurement**

Over the last several years, this Court has issued a line of decisions in which it has set aside "best interests" override decisions where agencies had based them on determinations that a new contract would be better, in terms of either performance or cost, than an existing contract. The Court's decisions expressly ground this result in the Congressional intent, expressed in CICA's automatic stay provision, to provide for meaningful review of federal procurement actions by GAO.

The seminal case in this area is *PGBA, LLC v. United States*, 47 Fed. Cl. 655 (2003) (Allegra, J.), in which the Court granted the plaintiff a preliminary injunction enjoining the performance of the contract at issue there. Although applying a deferential standard of review, the Court subjected the override decision to a thorough and searching examination, as a result of

which it rejected the agency's principal justification, leaving only the contention that the new contract would provide "better and more efficient services." *Id.* at 662. The Court went on to reject this rationale as well, declaring that:

> without more, the court does not believe that the mere fact that the new contracts would be better than the old is enough to support the override decision under either prong of section 3553. . . . Indeed, were the fact that a new contract is better than the old sufficient for this purpose, *little would be left of Congress' efforts in CICA to strengthen the stay provisions* and, with that, promote the integrity of the GAO review process.

*Id.* at 662-63 (emphasis added).

The Court described the background that led Congress to enact the stay provision:

> The stay provisions were designed to preserve the status quo until the Comptroller General issued his recommendation, in order to ensure that the recommendation would be considered. Under prior practice, procuring agencies had tended to exploit loopholes in earlier stay regulations; *they would rush into contract awards and get performance underway so that, by the time the Comptroller General's recommendation came out, it would be too late and too costly to change contract awards*, if such was the recommendation.

*Id.* at 660 n.8 (emphasis added) (citations omitted). This theme, and the corresponding need to prevent agencies from circumventing the stay, consistently reappear in the later override cases.

In *University Research Co., LLC v. United States*, 65 Fed. Cl. 500 (2005) (Wolski, J.), the Court also confronted an argument, in the context of a "best value" procurement, that the agency's override decision was justified by prospective cost savings. The Court rejected that argument, reasoning that:

> if a determination by a contracting officer that one bidder's proposal represented the best value to the government were sufficient for overriding the automatic stay, as a practical matter, *the automatic stay would be meaningless in virtually every single instance in which a GAO protest was filed.* Almost invariably when a contract is awarded through a competitive process, the award will be based on the awardee offering the best value, and *in many cases this also means that the contract will cost the government less money.*

*Id.* at 503 (citing *PGBA*, 57 Fed. Cl. at 662) (emphasis added) (citation omitted). Accordingly, the Court enjoined the agency's override of the automatic stay. *Id.*

Similarly, in *CIGNA Government Services, LLC v. United States*, 70 Fed. Cl. 100 (2006) (Williams, J.), the procuring agency advanced the argument that the immediate implementation of the new contracts would result in benefits to the agency, including both service enhancements and cost savings due to the lower risk of errors in paying Medicare claims. *CIGNA*, 70 Fed. Cl. at 113. The Court rejected this conclusion not only as unsupported by the record but also as an insufficient basis for a "best interest" override. *Id.* ("the mere fact that a new contract provides advantages or efficiencies over the prior contract does not support a best interest override") (citing *Chapman Law Firm Co. v. United States*, 62 Fed. Cl. 464, 466 (2004) (Merow, S.J.) ("[n]ormally the fact that a new contract is better than an old contract would not constitute a valid basis for an override decision")).

Finally, just this past month, in *Advanced Systems Development, Inc. v. United States*, __ Fed. Cl. ___, 2006 WL 2130548 (July 28, 2006) (Baskir, J.), the Court again struck down a best-interests override predicated on cost savings and other alleged advantages of a new contract:

> The allegation that the new contract is better than the old one *in terms of cost or performance* is not enough to justify a best interests determination. Indeed, it will almost always be the expectation that the new contract will be an improvement over the old. *To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic.*

*Id.* (emphasis added) (citing *PGBA*, 57 Fed. Cl. at 662-63, and *University Research Co.*, 65 Fed. Cl. at 503).

The combined teaching of these cases is that the prospect of better service or a better price, by itself, is inadequate to justify a best-interests override. This conclusion has special resonance in a best-value procurement such as this one, in which the RFP elevated technical merit and past performance to the extent that they were not just more important, but "significantly more important," than price.

Nonetheless, CBP's override decision here relies solely on the prospect of receiving a better price from the lower technically rated offeror, DTI:

> Resumption of contract performance [by DTI] will result in significant *savings to the Government*, and therefore is in the best interests of the United States.

CBP Override D&F, at 2 (Ex. 2) (emphasis added). Under the line of cases described above, this determination cannot stand, as it would allow the procuring agency to circumvent the expressed will of Congress to preserve meaningful remedies in GAO bid protests.

**2. CBP's Override Decision Fails to Identify or Consider the Prospective Savings for the Relevant Time Frame, Which Is Only the Next Three Months, Not the Next Year or the Next Five Years, as the Decision Suggests**

Even if the prospect of cost savings were legally sufficient, CBP's override decision would still be deficient because it does not identify the prospective cost savings on which the decision is actually based.

This can be seen by looking at the table incorporated into the decision, which sets forth prospective cost savings, as calculated by CBP for the sample tasks in the RFP, on a year-by-year basis for the full five-year period of performance of the new contract. *See* CBP Override D&F, at 2 (Ex. 2). The memorandum includes five columns, one for each year of the

new contract. Based on the sample tasks evaluated by CBP, each column shows a monthly charge for ATI and a monthly charge for DTI. Nowhere, however, does the decision specify the prospective cost savings that the agency actually took into consideration. Consequently, there is no way of knowing whether the agency based its override decision on the cost savings for one month, for one year, or for five years. Indeed, there is no way of knowing why the table even includes years 2 through 5, since those years are entirely irrelevant to the override decision. For all we know, the agency based its decision on all five years, even though the only relevant time frame is the next three months, since that is the time frame in which GAO will decide the bid protest.[4]

Accordingly, even if prospective cost savings were legally relevant (which is contrary to the authorities presented above), the override decision is fatally defective for not having identified, let alone relied on, the only time frame that is relevant to the analysis. *See PGBA*, 57 Fed. Cl. at 659 (an agency's best-interests determination is arbitrary and capricious if the contracting official relied on factors that were irrelevant or, conversely, ignored factors that were relevant); *accord CIGNA*, 70 Fed. Cl. at 110 (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)).

**3. CBP's Override Decision Also Fails to Adequately Articulate or Evaluate the Risks of Incurring Offsetting Costs or Disruption in the Event that GAO Sustains ATI's Bid Protest**

With only brief discussion and faulty analysis, CBP's override decision wishfully dismisses the possibility that ATI may prevail in its GAO bid protest and, thus, takes no account of the costs that the agency may incur if ATI does prevail.

[4] Nor does the override decision take into account any variance between the sample tasks used to evaluate pricing and the actual workload that the data center will experience. *See* Fauser Decl. ¶ 26.

As an example of the faulty analysis, the override decision discounted ATI's challenges in the GAO protest to CBP's technical evaluations as untimely. This decision rested this conclusion on the grounds that CBP had disclosed the offerors' combined technical and past performance scores in a solicitation amendment issued in early April 2006. In doing so, however, the override decision overlooks the fact that ATI had no basis to protest the scoring at that time, since the scoring had not yet caused it any prejudice. As far as ATI knew, CBP still could have awarded the contract to ATI. It was not until several months later that CBP announced that it had awarded the contract not to ATI but to DTI, at which point ATI timely protested. Moreover, GAO likely would have dismissed any protest in April as premature since ATI would not have had, or even been entitled to, a debriefing then. *See* 4 C.F.R. § 21.2(a)(2) (GAO may close a file without prejudice on any protest that has been filed before a statutorily required debriefing); FAR 15.506 (post-award debriefing is required upon written request received within three days *after* receiving notice of award).

CBP's cavalier dismissal of the merits of the protest is precisely the type of "naked" assertion that the decisions of this Court do not countenance. In *PGBA*, for example, the procuring agency's director of acquisition similarly failed to take into consideration the possible costs associated with his override decision, in the event that GAO sustained the protest. 57 Fed. Cl. at 662. As the Court put it,

> [t]he Director made no effort to quantify these costs, assuming instead either that the GAO protest would be denied, or that if sustained, [the awardee] would continue to perform. In the court's view, the Director thus appears all but to have ignored a variable that should have been an important aspect of his cost evaluation calculus.

*Id.* This is contrary to CICA. As the Court pointed out, "[t]here is clear indication that Congress intended such costs to be considered by agency officials in making a 'best interest'

determination." *Id.*, n.11 (citing H.R. Conf. Rep. No. 98-861 at 1436, U.S.C.C.A.N. 1984, at 697, 1080-81).

In *CIGNA*, the Court similarly found that the procuring agency had made no assessment of the risks to the agency if GAO were to grant the protest at issue there and direct a recompetition, as the protestor was urging. *CIGNA*, 70 Fed. Cl. at 111. According to the Court, the override determination there "reflect[ed] no consideration of the termination and transition costs involved if the contract awardees continue performance but GAO sustains CIGNA's protest." *Id.* Instead, the override determination simply stated, in summary fashion, that "'the potential harm to [the] Medicare program in delaying implementation of the [new] contracts outweighs the risk that GAO will require corrective action . . . .'" *Id.* at 111-12. Per the Court, such a "'naked' assertion," standing alone, would not support an agency's override decision. *Id.* (quoting *PGBA*, 57 Fed. Cl. at 660-61); *see also Advanced Systems Development*, 2006 WL 2130548, at *7 (Fed. Cl. July 28, 2006) (setting aside an override determination that, *inter alia*, failed to "compare the perceived disadvantages of recognizing the stay to the potential disadvantages that might result if [the plaintiff] prevails in its protest").

Simply put, under the standards of the APA, the offsetting costs are a relevant factor that the agency must consider when it decides to override a stay. Here, as was true of the procuring agencies in *PGBA*, *CIGNA*, and *Advanced Systems Development*, CBP gave short shrift to that factor.

CBP also seems to have overlooked the possibility that DTI will not, in fact, be in a position to begin performing the work with cleared personnel on or any time close to September 1, due to CBP's stringent background investigation requirements, or even by the time

GAO resolves the protest. *See* Fauser Decl. ¶ 30 (Ex. 3). The override decision, however, makes no mention of the disruption that this could cause.

### 4. CBP's Override Decision Fails to Consider Whether Overriding the Stay Would Serve or Undermine the Public Interest in Promoting CICA's Goal of Competition

As the Court's discussion of the legislative history in *PGBA*, makes clear, Congress has determined that the public interest is best served by maintaining a vigorous bid protest regime, preserved and buttressed by the automatic stay provisions. *See PGBA*, 57 Fed. Cl. at 660 & n.8. In *CIGNA*, this Court went even further by determining that the Congressional mandate for competition is a relevant factor in an override decision and that the procuring agency there erred by failing to take it into account when it decided to override the automatic stay:

> Nor did the override decision consider the statutory mandates for competition in both CICA and the [new Medicare law] and the adverse effect on competition that the override could effect.

*CIGNA*, 70 Fed. Cl. at 102.

In its override decision here, CBP likewise failed to give any real consideration to this factor.

## B. Absent Temporary or Preliminary Injunctive Relief, Plaintiff ATI Will Suffer Irreparable Harm

"When assessing irreparable injury, the relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *PGBA, LLC*, 57 Fed. Cl. at 664 (citation and internal quotation omitted). It has long been held that wrongful government action depriving a contractor of the "opportunities of the market place establishes the requisite 'irreparable injury' which no legal remedy could either value or redress." *See also PGBA, LLC*, 57 Fed. Cl. at 664 ("This court has acknowledged that a lost opportunity to compete

may constitute an irreparable harm") (citing *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000)).

Potential loss of work, however, is not the only cognizable harm. There is also the competitive harm to the protestor, both from losing its legitimate competitive advantage as the incumbent and from the competitive advantage that the awardee, by proceeding to perform the new contract, may gain in the event of a recompetition. *See CIGNA*, 70 Fed. Cl. at 101-02.

Here, ATI faces the prospect of injury that is both substantial and goes beyond the potential loss of the opportunity to compete in the instant procurement. Equally importantly, that injury is looming on the horizon *less than ten days ahead.*

Simply put, absent temporary or preliminary injunctive relief in the next several days, plaintiff ATI will be required to wind down its operations at the data center, transition the work to DTI, break off its contractual relationships with its OEM partners, and lose its legitimate incumbency advantage. At the same time, by installing itself in the data center (assuming it can comply with the security requirements in time), DTI will gain an incumbency advantage for any recompetition resulting from the GAO protest. *See* Fauser Decl. ¶ 28. "Allowing the awardees to continue with performance could skew the playing field if GAO were to order a reopening of the procurement, thus compromising competition." *CIGNA*, 70 Fed. Cl. at 112. This runs contrary to CICA, the whole point of which is to ensure that the statutory mandate for competition is enforced. *Id.*

### C. Temporary or Preliminary Injunctive Relief Will Not Substantially Harm the Government and May in Fact Benefit the Government

The harm to plaintiff ATI far outweighs any arguable harm to CBP. As indicated above, the override decision does not identify any potential harm to CBP other than the prospect of cost savings, a legally insufficient reason. Nor is there any other potential harm.

In that regard, neither the override determination nor any other communication from CBP has questioned the ability of ATI to continue providing IT maintenance services under its existing contract. Nor could it. ATI has been performing these services since July 2004, it is still on site and performing those services today, and its existing contract currently runs through December 2006, more than a month beyond the due date for GAO's protest decision. Moreover, the existing contract has options that would allow performance to continue well beyond December, and ATI stands ready to perform those options. *See* Fauser Decl. ¶¶ 7, 29.

Hence, there is no prospect that temporary or preliminary injunctive relief would cause any interruption or disruption to performance of maintenance services at the CBP data center during the pendency of the GAO bid protest. *Cf. Altos Federal Group, Inc. v. United States*, 60 Fed. Cl. 832, 833-34 (2004) (Futey, J.) (rejecting agency's claim that override was in the "best interests" of the United States where the incumbent was capable of providing ongoing services); *see also PGBA, LLC*, 57 Fed. Cl. at 663:

> [D]efendants have not cited anything in the record that supports their claim that reinstituting the stay will cause . . . beneficiaries to lose services . . . . In these circumstances, the balance of hardship tilts in the plaintiff's favor.

In fact, given the background investigation requirement and backlog at CBP discussed above, it appears that any attempt to transition to DTI presents the most significant risk of interruptions in service. *See* Fauser Decl. ¶ 31. Thus, the government may actually benefit by issuing ATI new task orders for the continued performance of the work.

Accordingly, the balance of hardships tilts decidedly in ATI's favor here.

### D. Injunctive Relief Will Serve the Public's Interest in Proper Enforcement of Procurement Laws

In enacting CICA and its automatic stay provision, Congress has determined that protestors are entitled to the benefit of an automatic stay, which "serves the public interest in

proper enforcement of the procurement laws and regulations." *ES-KO, Inc. v. United States*, 44 Fed. Cl. 429, 436 (1999). The public interest is compromised, therefore, when agencies seek to frustrate the goals and purposes of the automatic stay. *See PGBA*, 57 Fed. Cl. at 657-58 & n.3, 663. Granting the relief that ATI seeks will preserve public confidence in the integrity of the federal procurement process and the wise expenditure of public moneys. *Id.* at 663.

The public interest will also be served by avoiding an unnecessary transition in service providers and the associated potential for interruptions in service during the time that it takes for GAO to decide the protest, and then another transition, should ATI prevail in its GAO protest. This would be a waste of public funds.

**CONCLUSION AND RELIEF REQUESTED**

Because the procuring agency's decision to override the mandatory CICA stay is based on a legally insufficient ground and, even then, fails to consider several relevant factors, ATI is likely to prevail on the merits of its claim that the agency has unlawfully overridden the stay. Absent injunctive relief, the override decision threatens to inflict substantial and irreparable harm on plaintiff ATI *and to do so beginning in no more than ten days.*

In contrast, injunctive relief would cause little if any harm to the government and might even benefit the government if GAO ultimately sustains ATI's bid protest. Moreover, injunctive relief is necessary to preserve the status quo pending the resolution of that protest and, pursuant to the Congressional mandate expressed in CICA's stay provision, ensure that GAO can offer ATI a meaningful and effective remedy for the errors that occurred in the procurement.

Accordingly, ATI requests that this Court expeditiously issue a temporary restraining order and a preliminary injunction prohibiting the procuring agency, CBP, from implementing its

override decision or allowing performance by DTI to proceed pending the final resolution of the GAO bid protest proceeding, including any resulting recompetition or related corrective action.

Dated: August 22, 2006

Respectfully submitted,

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

# EXHIBIT 1

Washington, DC 20229

U.S. Customs and Border Protection

August 7, 2006

VIA FACSIMILE

Ms. Shelia Corbett
President
Automation Technologies, Inc.
Suite 350
1950 Old Gallows Road
Vienna, VA 22182

SUBJECT: Solicitation No. HSBP1005R0541
Preventive and Remedial Maintenance for CBP Mainframe Environment

Dear Ms. Corbett:

This letter constitutes a written debriefing of your firm's proposal as requested in your e-mail message dated August 7, 2006. This debriefing will provide information required by FAR 15.506, and contains only that information which the Contracting Officer is allowed by regulation to disclose.

Evaluation Results

As stated in the award notification, after careful consideration we determined that your firm's proposal was not the most advantageous to the Government. The contract was awarded to:

DIGITAL TECHNOLOGIES, INC
45150 BUSINESS COURT
SUITE 550
STERLING, VA 20166-6707

Technical/Past Performance scores were released in Amendment No. 0004, and no changes were made to the scores after receipt of final price proposals. Scores and evaluated prices were as follows for your firm and the successful offeror:

| | DTI | ATI |
|---|---|---|
| Technical/Past Performance Score | 76% | 85% |
| Evaluated Price (including options) | $39,762,397.56 | $46,635,300.00 |

Based on a detailed, integrated evaluation by the Government (identified in Section A.40 BASIS OF AWARD (TRADE-OFF ANALYSIS)) of how well the proposals satisfied the evaluation criteria, your firm's proposal was found not to represent the best value to the Government, considering price and technical scoring. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more

for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

I would like to thank you for your participation in this procurement and I hope the information provided above will assist you in future competitions.

Sincerely,

Thomas M. Uberto

Thomas M. Uberto
Contracting Officer

# EXHIBIT 2

AUG-18-2006 17:38 From:OFC OF CHIEF COUNSEL 2023442950 To:703 744 7605 P.2/3
Aug-17-06 11:16am From-Procurement 2023441812 T-461 P.002/003 F-668

Washington, DC 20229

U.S. Customs and Border Protection

Determination and Findings

**Authority to Resume Contract Performance**

Upon the basis of the following finding, contract work may be resumed under the contract notwithstanding the GAO protest pursuant to the authority of Federal Acquisition Regulation, 33.104(c)(2)(i).

Findings

1. The subject requirement is for information technology maintenance services. Specifically, the contractor maintains, diagnoses, troubleshoots, repairs and replaces CBP mainframe and distributed systems computing environment and its associated peripherals and storage sub-systems. The Mainframe and Distributed Systems computing environment at the National Data Center and the Commercial Recovery Facility support CBP mission critical systems such as The Enforcement Communications System (TECS), U.S. Visitor & Immigrant Status Indicator Technology (US-VISIT), Automated Targeting Systems (ATS), Enterprise Data Warehouse (EDW), Automated Commercial System (ACS), Advance Passenger Information System (APIS), e-APIS and SAF Finance System.

2. The protest filed by Automation Technologies, Inc. (ATI) contains three bases;

a. CBP failed to properly perform or adequately document a technical/cost tradeoff analysis (protestor states that their offer is higher rated technically and is only moderately more expensive).

b. Awardee's CLIN pricing is unrealistically low, and their offer should have been downgraded for poor past performance, and

c. The technical evaluation of protestor's proposal was unreasonable.

The protest matter pertaining to the cost/technical tradeoff is without merit since the tradeoff analysis was well documented as shown on pages 7-8 of the attached Price Negotiation Memorandum (PNM) and strongly supported the award decision. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

Although the awardee's pricing will result in significant cost savings to the Government, the protest basis pertaining to unrealistically low CLIN pricing (CLINs 0002 and 0010 in particular) is unfounded. The protestor states simply that the awardee does not understand the Government's requirements. CLIN pricing offered by the protestor and the awardee is shown in the PNM. As to downgrade of the awardee's offer for poor past performance, the protestor is unaware that CBP/OIT was used as a past performance reference by the awardee, and the awardee received the highest possible past performance rating from CBP/OIT.

The portion of the protest pertaining to the technical evaluation/scoring will be resolved against the protestor, since the protest is now untimely. Technical scoring for all offerors was released with Amendment No. 0004 on April 6, 2006.

Office of Chief Counsel has reviewed the protest and does not believe the protest will be resolved in favor of the protestor.

3. Resumption of contract performance will result in significant savings to the Government, and therefore is in the best interests of the United States.

| | Monthly Charge 05/06 - 04/07 | Monthly Charge 05/07 - 04/08 | Monthly Charge 05/08 - 04/09 | Monthly Charge 05/09 - 04/10 | Monthly Charge 05/10 - 04/11 |
|---|---|---|---|---|---|
| ATI | $777,255.00 | $777,255.00 | $777,255.00 | $777,255.00 | $777,255.00 |
| | | | | | |
| DTI | $674,058.73 | $660,191.46 | $660,886.58 | $658,924.02 | $659,472.34 |
| ***Savings*** | ***$103,196.27*** | ***$117,063.54*** | ***$116,368.42*** | ***$118,330.98*** | ***$117,782.66*** |

Determination

Based on above, I hereby determine that it is in the best interests of the United States to authorize resumption of performance under Contract No. HSBP1006D01287 with Digital Technologies, Inc., including placement of a necessary delivery order covering no more than 120 days.

PREPARED BY:

Thomas M. Uberto 8-15-06

Thomas M. Uberto, Contracting Officer Date

CONCURRENCE:

[signature] 8-15-2006

Chief, Business Solutions Branch Date

Linda M. Krauch 8/15/2006

Acting for Director, Information Technology Acquisition Division Date

Kami Whitfield 8/16/06

Procurement Analyst, Procurement Programs Division Date

APPROVAL:

[signature] 8-17-06

John H. Ely, Executive Director, Procurement Date

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. ___________ |
| v. | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | BID PROTEST |

**DECLARATION OF PAUL FAUSER**

I, Paul Fauser, pursuant to 28 U.S.C. § 1746, state as follows:

1. I am the Sr. Vice President, Programs for Automation Technologies, Inc. ("ATI"). I have been employed by ATI since January 2000. I am responsible for the oversight and direction of technical programs for the company.

2. I submit this declaration in support of ATI's action to set aside and enjoin the government's decision to override the stay imposed by the Competition in Contracting Act when ATI filed a post-award bid protest with the Government Accountability Office ("GAO") challenging the government's award of a contract to Digital Technologies, Inc. ("DTI")

3. The Department of Homeland Security, Bureau of Customs and Border Protection ("CBP") awarded the contract, valued at up to $49.5 million over five years, under a negotiated best value solicitation calling for ongoing computer hardware maintenance services that ATI is currently performing under a contract that runs through December 2006 and includes options for further periods of performance.

4. ATI is a professional services firm providing information technology ("IT") consulting and support services to federal government and commercial customers. ATI is a

Delaware corporation with its principal place of business at 1950 Old Gallows Road, Suite 350, Vienna, Virginia 22182. ATI is the incumbent contractor for the work called for by the underlying solicitation in the GAO bid protest, and has been performing that work since July 2004, when it took over the work from DTI, the previous incumbent contractor.

**A. The Solicitation and Initial Award to ATI**

5. The contract at issue relates to CBP's data center, located in Springfield, Virginia. The center is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time. On or about September 30, 2005, CBP issued an unrestricted Request for Proposals ("RFP"), No. HSBP10-05-R-0541, for on-site preventive and remedial maintenance of the mainframe and distributed systems, storage units and other peripheral equipment located at the center.

6. The RFP contemplated the award of a fixed-unit-price, indefinite-delivery/indefinite-quantity ("IDIQ") contract, with a guaranteed minimum of $2,500 worth of orders and annual ordering ceilings of $9.9 million for each of the base period and four option periods, for a total contract ceiling of $49.5 million.

7. Plaintiff ATI is the incumbent contractor for this work, having performed this work thus far under two different contracts. ATI's first contract ran from July 2004 through December 2005. The second contract (No. HSBP10-06-C-1143), under which ATI is currently performing the work, runs from January 1, 2006 through December 31, 2006, but includes options allowing CBP to extend the contract for up to five years. ATI has at all times continued to perform the work specified by its contract and continues to do so today. At the present time, however, ATI's current task orders run only through August 31, 2006.

8. The RFP stated that CBP would award the contract on a best value basis, which would be determined through the use of a technical/price tradeoff analysis. The RFP established an evaluation scheme with three evaluation factors: technical, past performance, and price, in descending order of importance. Indeed, the RFP stated that the technical merits of an offeror's proposal would be "significantly more important" than its past performance, and that past performance in turn would be "significantly more important" than price. To emphasize CBP's priorities, the RFP reiterated that CBP was more interested in quality than in price, stating that:

> [t]he Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price.

9. In October 2005, ATI and two other offerors submitted proposals in response to the RFP. Following discussions, the three offerors submitted final proposal revisions ("FPRs").

10. As referred to above, in late December 2005, CBP awarded ATI a resulting contract (No. HSBP10-06-C-1143). This is the contract with the base period that runs through December 31, 2006, under which ATI is currently performing.

**B. DTI's Bid Protests and the Re-Opened Competition**

11. About a week after CBP awarded the contract to ATI, DTI filed a bid protest with CBP, in which it challenged the suggested pricing format that CBP had included in the RFP and raised related allegations. CBP dismissed the protest, in part, as untimely and denied it, in part, on the merits.

12. Following CBP's decision, DTI apparently filed a bid protest at GAO. In response to this protest, CBP apparently decided to take corrective action, as a result of which GAO dismissed the protest as academic.

13. On March 31, 2006, CBP issued RFP Amendment No. 3 in which it re-opened the competition and called for the submission of revised price proposals. The amendment provided new pricing formats substantially identical to those that ATI had earlier submitted in response to the solicitation. Pursuant to these formats, CBP was to evaluate price based on a sample mix of work.

14. The pricing formats also disclosed to the offerors the identities of ATI's OEM partners, such as IBM, ViON, and Fujitsu, as well as the equipment that was being maintained by each partner.

15. On April 6, CBP issued RFP Amendment No. 4, in which it disclosed ATI's proposed pricing, on a line-item by line-item basis.

16. On April 11, ATI timely submitted a revised price proposal.

**C. The Notice of Award to DTI and ATI's Debriefing**

17. On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26.

18. On Monday, August 7, ATI requested a debriefing from CBP, which CBP supplied in written form later that day. The debriefing, slightly more than one page long, indicated that ATI's combined technical and past performance score was 85%, while DTI's combined score was only 76% (representing a difference of almost 12%). The debriefing also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%).

19. The debriefing provided by CBP explained the tradeoff decision in just one sentence:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

**D. ATI's GAO Bid Protest and the Resulting CICA Stay**

20. On Friday, August 11, within five days of the debriefing, ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. GAO notified CBP of the protest later that same day.

21. In its GAO protest (B-298618), ATI has challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a technically-acceptable, low-cost procurement) and its flawed evaluations of the offerors' technical proposals and past performance.

22. GAO's decision in the bid protest is due no later than November 20.

**E. The Agency's Decision to Override the CICA Stay**

23. On the afternoon of Thursday, August 17, 2006, CBP notified GAO that it had determined that it was in the "best interests" of the United States to override the automatic stay.

24. I understand that on Friday, August 18, ATI's counsel requested, and CBP's counsel furnished, a copy of the agency's override memorandum.

25. Apparently in the belief that DTI had begun to perform the new contract, the drafter of the override memorandum purported to justify the override decision on the grounds that:

> [r]esumption of contract performance [by DTI] will result in significant savings to the Government, and therefore is in the best interests of the United States.

26. One fault in the cost savings projection is that it overstates current maintenance requirements and fails to reflect a recent downward trend in the amount of maintenance under

this contract since the time of the release of the RFP last year. Equipment is continually being de-installed and replaced with fewer quantities containing greater capabilities (new technology). For example, there are less equipment today under CLIN 10, DASD Subsystems (17), than there was at the time of release of the RFP (21). The sample tasks used for the cost saving projections do not reflect this reality and, as result, overstate the cost savings.

**F. The Impending Transition to DTI**

27. If CBP's override decision is allowed to stand, DTI may begin on-site performance as early as September 1, 2006, following the expiration of ATI's existing task orders on August 31, less than ten days away.

28. If ATI is forced to discontinue performance and terminate its contracts with its OEM partners, its reputation and relationships with its OEM partners will suffer, it will lose its legitimate competitive advantage as the incumbent in any recompetition recommended by GAO, DTI will gain an undue competitive advantage as the new incumbent in any recompetition, and ATI will lose profits during any interruption of its performance.

29. ATI also may be liable to one of its OEM subcontractors, because ATI is required to give it 30 days advance notice of discontinuance of maintenance. CBP, meanwhile, has not afforded ATI any direction – let alone 30 days notice – for it to cease performance and cancel maintenance under the contract. ATI of course stands ready to perform for the duration of its contract's base period, as well as any option periods, and is now therefore in a position where it could experience significant liability to this OEM partner if CBP does not authorize performance beyond August 31.

30. ATI also stands potentially to lose its CBP data center Project Manager (the "PM"), who is a valuable asset to ATI, if ATI cannot continue to employ him in his current

position on the CBP contract. ATI could temporarily place this individual in an overhead function, which would be costly to ATI. If ATI lost this employee, ATI's ability to continue to compete for the contract work may be diminished, and his disengagement from this project would be a loss to CBP as well. If ATI lost its current PM, ATI might also have to undergo the time-consuming process of a new CBP background investigation process, which can take 4 to 5 months to complete. This requirement and process is discussed below.

31. It is ATI's experience, and it is a requirement of the RFP, that no contractor personnel may have access to the workplace until a background investigation ("BI") is completed by the CBP. RFP Section A.25 states, "A Contactor employee shall not begin working under the contract until the entire background investigation (BI) is completed with approval of the CBP, Security Programs Division." RFP Sections A.16 and A.17 similarly require, "All contractor employees requiring recurring access to the Government facilities or access to sensitive information or IT resources are required to have a favorably adjudicated background investigation prior to commencing work on this contract." It is absolutely essential to the performance of this contract that the PM have access to the complete worksite and to certain sensitive customer information. To ATI's knowledge, however, DTI's PM has not passed the BI, and in fact we understand that DTI only obtained the necessary forms on Friday, August 18, 2006. The RFP states that the BI process takes 90 to 120 days to complete, and in

//

//

//

//

our experience this process takes even longer. The RFP does allow CBP to grant waivers, but at a minimum the DTI PM will not in all likelihood have passed the BI before he or she is given access to sensitive government information.

I declare under the penalty of perjury that the foregoing is true and correct

Executed on August 22, 2006.

Paul D. Fauser