IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-599C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

Pursuant to the Court's August 22, 2006 order, defendant, the United States, respectfully submits the following brief in opposition to the application for a temporary restraining order and motion for a preliminary injunction filed by plaintiff, Automation Technologies, Inc. ("ATI").

## STATEMENT OF FACTS

U.S. Customs and Border Protection ("CBP" or "agency"), a component of the Department of Homeland Security, solicited proposals for on-site maintenance services for mainframe computing equipment on September 30, 2005. A.R. 1-100.[1] CBP amended the solicitation on October 7, 2005, and November 14, 2005. A.R. 101-04.

ATI, Digital Technologies, Inc. ("DTI"), and Signature Technology Group, Inc. ("Signature"), submitted proposals. A.R. 105-12. CBP evaluated the proposals and credited ATI with a technical evaluation score of 85 percent, versus 76 percent for DTI. CBP also found that ATI's price was significantly lower than DTI's price. A.R. 111. Accordingly, CBP found that ATI's offer represented the best value to the Government. A.R. 112.

---

[1]"A.R." refers to the administrative record that is being filed in this case.

CBP awarded the contract to ATI on January 4, 2006. A.R. 113. DTI filed a bid protest with the Government Accountability Office ("GAO") on January 11, 2006. A.R. 115-119. Pursuant to 31 U.S.C. § 3553(d)(3)(A), an automatic stay of the award to ATI went into effect.

CBP exercised its authority pursuant to 31 U.S.C. § 3553(d)(3)(C) to override the stay of the award to ATI. In its determination and findings dated January 17, 2006, CBP stated in relevant part:

> 1. The subject requirement is for information technology maintenance services. Specifically, the contractor will be required to maintain, diagnose, troubleshoot, repair and replace mission-critical CBP mainframe and distributed systems computing equipment and associated peripherals and storage sub-systems. . . .
>
> 3. The Mainframe and the Distributed Systems computing environment at the National Data Center and the Commercial Recovery Facility support CBP's mission-critical systems . . . . If resumption of contract performance is not authorized, CBP will be unable to assure the continued operation of mission critical systems, and the Mainframe and the Distributed Systems will be exposed to significant risk of frequent hardware failure and unplanned outages. Hardware failure would result in an unavailability of the network operating environment for an extended period of time and the following mission-critical systems (mandated by Congress) would be severely impacted.
>
> • TECS is used at airports to clear visitors and immigrants who enter the U.S. TECS is a database containing enforcement actions and records of individuals, vehicles, vessels, aircraft, and businesses of interest and suspected violators of federal law.
>
> • US-VISIT refers to a border security and enforcement initiative designed to electronically check in and check out nonimmigrant visa holders coming to the United States to work, study, or visit.
>
> • ACS is the central system used to track, control, and record commercial tasks required for import entry, duty collection, and exportation. If ACS is down, the inspectors will not be able to clear the shipments at the port of entry (POE) resulting in delay of

> all shipments and millions of dollars in lost revenue to the Government.
>
> • ATS is a web-based system that provides users with an Intranet accessible linkage designed to identify high-risk passengers and cargo for special examination.
>
> • APIS and e-APIS – is the APIS system is the single most critical element of this nation's ability to identify dangerous individuals on international flights.

A.R. 120-21. Pursuant to these findings, CBP determined that it was in the Government's best interests to override the stay and place an initial order for services from ATI covering no more than 120 days. Id. CBP issued purchase orders to ATI on January 24 and February 8, 2006. A.R. 122-99.

DTI proceeded with its bid protest before the GAO. At an alternative dispute resolution session held on March 20, 2006, GAO's attorney indicated that CBP's pre-award discussions with ATI, which CBP considered to be permissible clarifications, appeared to constitute improper discussions that were contrary to Federal Acquisition Regulation 15.306(d)(1). A.R. 200-01. Accordingly, CBP decided to amend the solicitation, consider revised proposals, and use a new price evaluation as the basis for a new award decision. Id. CBP left ATI in place as awardee, pending the new award decision. Id. As a result of CBP's corrective action, GAO dismissed DTI's protest. A.R. 202.

CBP amended the solicitation, effective as of March 31, 2006. A.R. 203-09. ATI, DTI, and Signature submitted new cost proposals. A.R. 213-222. Because the amended solicitation did not call for revised technical proposals, the technical scores of ATI (85 percent) and DTI (76 percent) remained the same. However, DTI was the low bidder for the amended solicitation.

CBP determined that compared to ATI, DTI offered savings at a monthly rate of $103,196.27 for the first year, with slightly higher savings for subsequent year options. After comparing DTI's price advantage with ATI's technical advantage, the agency concluded: "CBP is unwilling to pay 17% more than DTI's offered price to obtain a 9 percentage point increase in technical scoring, particularly when DTI has provided this service to CBP in the past at an acceptable performance level." A.R. 220.

On August 4, 2006, CBP made an award to DTI pursuant to the amended solicitation. A.R. 223. ATI filed a bid protest with GAO on August 11, 2006. An automatic stay for the new award went into effect pursuant to 31 U.S.C. § 3553(d)(3)(A).

On August 15, 2006, CBP exercised its authority to override the stay of the new award to DTI. In its determination and findings, CBP stated in relevant part:

> 2. The protest filed by Automation Technologies, Inc. (ATI) contains three bases:
>
> a. CBP failed to perform or adequately document a technical/cost tradeoff analysis (protestor states that their offer is higher rated technically and is only moderately more expensive).
> b. Awardee's CLIN pricing is unrealistically low, and their offer should have been downgraded for poor past performance, and
> c. The technical evaluation of protestor's proposal was unreasonable.
>
> The protest matter pertaining to the cost/technical tradeoff is without merit since the tradeoff analysis was well documented as shown on pages 7-8 of the attached Price Negotiation Memorandum (PNM) and strongly supported the award decision. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the

> comparatively small difference in technical/past performance scores.
>
> Although the awardee's pricing will result in significant cost savings to the Government, the protest basis pertaining to unrealistically low CLIN pricing (CLINs 0002 and 0010 in particular) is unfounded. The protestor states simply that the awardee does not understand the Government's requirements. CLIN pricing offered by the protestor and the awardee is shown in the PNM. As to downgrade of the awardee's offer for poor past performance, the protestor is unaware that CBP/OIT was used as a past performance reference by the awardee, and the awardee received the highest possible past performance rating from CBP/OIT.
>
> The portion of the protest pertaining to the technical evaluation/scoring will be resolved against the protestor, since the protest is now untimely. Technical scoring for all offerors was released with Amendment No. 0004 on April 6, 2006.
>
> Office of Chief Counsel has reviewed the protest and does not believe the protest will be resolved in favor of the protestor.

3. Resumption of contract performance will result in significant savings to the Government, and therefore is in the best interests of the United States.

| | Monthly Charge 05/06 - 04/07 | Monthly Charge 05/07 - 04/08 | Monthly Charge 05/08 - 04/09 | Monthly Charge 05/09 - 04/10 | Monthly Charge 05/10 - 04/11 |
|---|---|---|---|---|---|
| ATI | $777,255.00 | $777,255.00 | $777,255.00 | $777,255.00 | $777,255.00 |
| | | | | | |
| DTI | $674,058.73 | $660,191.46 | $660,886.58 | $658,924.02 | $659,472.34 |
| ***Savings*** | ***$103,196.27*** | ***$117,063.54*** | ***$116,368.42*** | ***$118,330.98*** | ***$117,782.66*** |

A.R. 236-37.

In its August 15, 2006 decision to override the stay, CBP limited the scope of the override to "placement of a necessary delivery order covering no more than 120 days," which would be 110 days from the filing date of this brief. A.R. 237. The GAO's decision is due in 85 days, on November 20, 2006.

# ARGUMENT

## I. Standard Of Review

### A. The Substantive "Arbitrary And Capricious" Standard

In a procurement-related challenge, the Court assesses the agency's decision pursuant to the review standard of the Administrative Procedure Act, 5 U.S.C. § 706(2), as incorporated by the Tucker Act, 28 U.S.C. § 1491(b)(4). RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1291 (Fed. Cir. 1999). Thus, ATI must "prov[e] that the override decision here was arbitrary and capricious." PGBA, LLC v. United States, 57 Fed. Cl. 655, 660 (2003).

Application of the arbitrary and capricious standard involves neither judicial fact finding, nor review of the agency's factual statements for "substantial evidence." See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (citing Camp v. Pitts, 411 U.S. 138, 140 (1973)). Rather, the Court will sustain an agency decision "evincing rational reasoning and consideration of relevant factors." Id. at 1058 (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974)). The Court should ask whether there has been "a clear error of judgment," without substituting its own judgment for that of the agency. E.g., Co-Steel Raritan, Inc. v. ITC, 357 F.3d 1294, 1309 (Fed. Cir. 2004). Consequently, in the context of this action, the Court should simply assess whether the written determination and finding of CBP’s Director of Field Contracting Operations supplies “a rational basis” for the agency’s determination to continue contract performance. Chapman Law Firm Co. v. United States, 62 Fed. Cl. 464, 466 (2004).

**B. The Standard For Preliminary Injunctive Relief**

Injunctive relief for a disappointed bidder is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). In order to obtain a preliminary injunction, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief by clear and convincing evidence based upon the following factors: (1) a likelihood of success on the merits; (2) that the plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to the plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000); PGBA, 57 Fed. Cl. at 657. But see Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004) (applying a preponderance of the evidence standard). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

**II. ATI's Request For Preliminary Injunctive Relief Should Be Denied**

Pursuant to 31 U.S.C. § 3553(d)(3)(C), an agency may override the automatic stay upon a written finding that:

> performance of the contract is in the best interests of the United States; or
>
> urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.

31 U.S.C. § 3553(d)(3)(C)(I); see also 48 C.F.R. § 33.104(c)(2). In this case, CBP overrode the stay pursuant to the "best interests" provision of the statute. A.R. 237. Although a finding

pursuant to either provision allows an agency to override an automatic stay, the standard of review for a "best interests" determination differs from that of an "urgent and compelling circumstances" determination.

The Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553, grants an agency significant discretion in choosing to override an automatic stay. Indeed, by enacting section 3553(d)(3)(C), Congress granted agencies even greater discretion in overriding automatic stays in the post-award context than in the pre-award context. Pursuant to 31 U.S.C. § 3553(c)(2), an automatic stay entered prior to contract award may be overridden only "upon a writing finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General." 31 U.S.C. § 3553(c)(2)(A). In post-award actions, by contrast, an agency has the additional option of overriding an automatic stay upon the more subjective finding that "performance of the contract is in the best interests of the United States." 31 U.S.C. § 3553(d)(3)(C)(i)(I). Post-award, a finding of "urgent and compelling circumstances" is not required. Id. In granting agencies the additional option of overriding an automatic stay when it is in the best interests of the United States, Congress recognized that the circumstances requiring an override may vary widely, and it granted agencies substantial discretion in making that determination.

**A. CBP's Determination and Findings Are Rational And Lawful And, Therefore, ATI Has Failed To Demonstrated A Likelihood Of Success On The Merits**

An agency's decision may be arbitrary and capricious where the agency: (1) "has relied on factors which Congress has not intended it to consider;" (2) "entirely failed to consider an important aspect of the problem;" (3) "offered an explanation for its decision that runs counter to

the evidence before the agency;" or (4) if the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Assoc. of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42 (1983). Those flaws are absent from the written finding under review.

As noted above, it is ATI's burden to demonstrate error in the written determination and finding. PGBA, 57 Fed. Cl. at 660. Because CBP's "best interest" finding is sufficient and speaks for itself, we will not attempt to catalog all of the reasons it is correct. We will nevertheless address ATI's argument that the cost savings identified by CBP are not sufficient grounds for determining that the override is in the best interests of the United States.

Congress, in granting procuring agencies authority to override the CICA stay when in the best interests of the United States, did not exclude cost savings from consideration. The cases cited by ATI are either inapposite or unpersuasive. The first, PGBA v. United States, focused primarily upon severe defects in the agency's estimates of the costs of delaying performance. In PGBA the Court held that there was no support for the "critical assumption" in the agency's analysis, that part of the agency's analysis was "directly controverted" by a declaration the agency submitted to the Court, and that the agency's main assumption was "so implausible as not to be the product of rational decisionmaking." 57 Fed. Cl. at 661. By contrast, in this case there is no dispute that DTI is the low bidder and that overriding the stay for the duration of the protest will result in significant savings to the Government.

The second opinion upon which ATI relies, University Research Co. v. United States, 65 Fed. Cl. 500 (2005), is not relevant here because that opinion addressed the merits of the bid

protest after the protest had been decided by GAO. The language cited in ATI's brief appears in the Court's summary of the procedural history of the case and is not part of the holding.

The third case cited by ATI, CIGNA Government Servs., LLC v. United States, 70 Fed. Cl. 100 (2006), is not on point. As in PGBA, the Court in CIGNA focused primarily on readily apparent flaws in the agency's analysis. In CIGNA, the agency's override determination emphasized an "extremely tight" schedule, such that any delays would strain the agency's administrative capacity and add significant risk to the implementation plan. 70 Fed. Cl. at 110. This determination, however, was demonstrably at odds with the agency's report to Congress that its published schedule gave the agency "the flexibility to adjust in response to any unforeseen changes in the marketplace or legislative environment." 70 Fed. Cl. at 111. ATI cannot point to any obvious inconsistencies in CBP's analysis of the contract in this case.

ATI's fourth case, Advanced Systems Development, Inc. v. United States, No. 06-484C, 2006 WL 2130548 (Fed. Cl. Jul. 21, 2006), is inapposite. In Advanced Systems, the agency failed to specify the cost savings in its initial determination and findings. Instead, the agency attempted to specify the savings in supplements to the administrative record. The Court found the agency's supplemental findings to be "no more than a litigation position to which no deference is due." Id. at * 11. Moreover, to the extent that Advanced Systems holds that an agency may not rationally rely upon cost savings in making a best interests determination, the opinion is unpersuasive. Congress placed no such limit upon the agency's discretion to determine when an override is in the best interests of the United States.

ATI's secondary argument, that CBP failed to identify the prospective cost savings in its override decision, lacks merit. ATI feigns confusion over the table included in the agency's

determination and findings, which illustrates the monthly cost savings over different time frames. The savings vary only slightly depending upon the time frame. For the first 12 months, the monthly savings are $103,196.27. If options are exercised in subsequent years, the savings would be slightly higher, but never more than $118,330.98 monthly. In any event, because the determination and findings expressly limits the scope of the override "to a necessary delivery order covering no more than 120 days," it is obvious that the agency's savings determination was based upon the projected monthly savings for that period. The identified savings are sufficient grounds for the CBP's determination than an override is in the best interests of the United States.

## B. The Balance Of Harms Compels The Denial Of Injunctive Relief

Not only are the merits ATI's challenge to CBP's "best interests" determination weak, the balance of harms also warrants a denial of preliminary injunctive relief. Indeed, no irreparable harm to ATI would flow from a denial of injunctive relief, whereas the harm to United States from an injunction would be substantial and virtually immediate. The Court should, therefore, deny ATI's request for a preliminary injunction. PGBA, 57 Fed. Cl. at 657; Overstreet Elec. Co., Inc. v. United States, 59 Fed. Cl. 99, 109 (2003) (listing equitable factors and noting "[c]ourts interfere with the government's procurement process only in extremely limited circumstances").

### 1. No Irreparable Harm To ATI Would Result From Denying Injunctive Relief

ATI fails to establish that it would suffer any irreparable injury from a denial of preliminary injunctive relief. ATI's main argument is simply that it will be deprived of the contract it would like to perform. "Normally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." Chapman Law Firm Co. V. United States, 67 Fed. Cl. 188

(2005) (sustaining override). Loss of business is not irreparable harm. "In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief." San Diego Beverage & Kup v. United States, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998).

ATI's arguments about prospective competitive harm are based upon speculation. ATI argues that it might lose its "incumbency advantage" in the event that GAO orders a recompetition for the award. But another recompetition is unlikely, given that the GAO analyzed the solicitation in the course of DTI's protest and was satisfied with the agency's corrective action. It is far more likely that GAO will resolve ATI's protest without calling for a third round of bids. ATI's speculation as to a prospective loss of advantage in the unlikely event of a recompetition does not constitute irreparable harm.

**2. The Harm To The United States Equals Or Outweighs The Harm To ATI**

It is undisputed that DTI was the low bidder for the second solicitation. If the stay is reinstated, the agency will be forced to issue new purchase orders to ATI at significantly greater expense. The financial harm to the Government equals or outweighs the harm to ATI.

**3. Denying Injunctive Relief Is In The Public Interest**

ATI's claims that overriding the stay would affect public confidence in the integrity of the procurement process are unfounded. To be sure, preserving competition is one of the main purposes of the CICA stay, and it would affect public confidence if stays could be arbitrarily or capriciously overridden. However, there is no suggestion here that the agency has attempted to

break or evade the rules of competitive contracting. To the contrary, the agency has fully complied with the letter and spirit of the statutory and regulatory scheme.

After DTI protested the original award, CBP overrode the stay only to the extent necessary to issue a purchase order for 120 days, the anticipated duration of the protest. CBP proceeded with alternative dispute resolution at GAO and accepted GAO's guidance concerning a resolicitation. After ATI protested the award to DTI, CBP responded with another override limited to a purchase order for 120 days. Unlike some of the cases cited by ATI, there is no suggestion here that CBP rushed into a contract with DTI in order to impair ATI's post-protest ability to receive an award. Given CBP's full cooperation with the GAO bid protest process to date, the agency's good faith cannot be reasonably questioned.

ATI, as the beneficiary of CBP's decision to override the stay created by DTI's protest, should realize that overrides are compatible with the public interest in appropriate cases. The override of the stay created by ATI's protest was equally appropriate.

## CONCLUSION

For these reasons, we respectfully request that the Court deny ATI's request for injunctive relief.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Class. Unit - 8th Fl.
Washington, D.C. 20530
Tel.: (202) 305-3091

August 25, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 25, 2006 a copy of foregoing "DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp