# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-599C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

## DIGITAL TECHNOLOGIES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Digital Technologies, Inc. ("DTI") hereby respectfully submits its opposition to the application of Plaintiff Automation Technologies, Inc. ("ATI") for a temporary restraining order.[1]

## STATEMENT OF FACTS

DTI is a family-owned and family-operated business, incorporated in Virginia in 1984, which provides, among other products and services, Information Technology products, Systems Integration, Technology Deployment, Multi-Vendor Installation, Software Support, and Hardware Maintenance. (Declaration of John Klein, ¶2) ("Klein Decl.")[2] DTI's customers include private companies, state and local governments and Federal agencies. One of those

---

[1] Concurrent herewith, DTI is filing a Consent Motion to Intervene. DTI was the successful offeror of the contract at issue in this case, the performance of which by DTI is scheduled to begin on September 1, 2006.

[2] Mr. Klein is a member of DTI's Board of Directors and its President and has held that position since July 2000. Mr. Klein has overall responsibility for all of DTI's business, including its contracts with agencies of the United States Government. His Declaration is attached hereto and submitted herewith.

federal agencies is the Bureau of Customs and Border Protection of the United States Department of Homeland Security ("CBP"). In fact, CBP has been a customer of DTI since 1994. (*Id.*)

DTI received its first award from CBP for the maintenance of IT Equipment installed at the Newington Data Center in 1994. This award was followed by six additional awards, which, including option years, covered the next ten years, through June 2004. (*Id.* ¶5)

ATI was awarded an 8(a) set-aside contract by CBP for the period beginning July 2004. CBP requested DTI to perform the maintenance support for three months, from July 2004 through September 2004, to facilitate the change in contractors. DTI provided the requested support through September 2004, and ATI assumed sole responsibility for the contract in October 2004. (*Id.* ¶6)

A new Solicitation (RFP HSBP 1005R0541) was issued by CBP on September 30, 2005 (the "RFP"), with responses due on October 11, 2005. When ATI was awarded the resulting contract for the period beginning January 2006, DTI filed an agency protest of the award with CBP and, upon denial of that protest by CBP, DTI filed a protest with the Government Accountability Office ("GAO"). Although CBP had denied DTI's agency protest, after the GAO made an Outcome Prediction in which it advised CBP that it "appeared the agency [CBP] improperly entered into discussions with only one offeror" in violation of procurement regulations, CBP negotiated with GAO the terms of the corrective action CBP would take. As a result, GAO dismissed the protest as academic. For its part, CBP revised its cost evaluation of the initial offers submitted by DTI and ATI and conducted another round of offers in which CBP considered only price as all other factors were deemed to be relatively equal among bidders. In

fact, there was only a small variance in technical scores (9%) and no variance in Past Performance. (*Id.* ¶7)

When CBP evaluated the revised price proposals submitted by DTI and ATI, CBP awarded Contract No. HSBP 1006D01287 (the "Contract") to DTI on July 26, 2006, to begin on September 1, 2006. (*Id.* ¶¶ 4, 11)

Thereafter, ATI filed a protest of that award at the GAO, the purpose and effect of which were to obtain the automatic stay in contract performance imposed by the Competition in Contracting Act, 31 U.S.C. § 3553. It is CBP's override of that stay which is the subject matter of this case.

**ARGUMENT**

**ATI'S APPLICATION FOR A TRO SHOULD BE DENIED**

ATI's application for a TRO should be denied in the circumstances of this case. In exercising its broad discretion regarding whether to grant injunctive relief, *see, e.g., PGBA, LLC v. United States*, 389 1219, 1223 (Fed. Cir. 2004), this Court should focus on two facts. First, the purpose of the automatic stay provision is to avoid unfair hardship to an unsuccessful offeror who has filed a timely protest and who may be determined, following the resolution of that protest, to be the successful offeror. The automatic stay prevents the commencement of performance of a contract that, it may later be determined, should have been awarded the protester. Second, that situation simply does not exist in this case. The contract at issue was awarded to ATI, and ATI has been performing it and reaping its economic benefits since January 2006. As of August 31, 2006, ATI will have received approximately $700,000 per month or a total of $5.6 million, and here is seeking to use the automatic to continue performing for another 4 months.

However, that contract should have been awarded to DTI, not ATI, because DTI's protest of the award of that contract resulted in CBP conducting another round of offers in which CBP considered only price. *See Klein Decl.* ¶7. DTI won that round and received the award last month. Thus, ATI is asking the Court to confirm the application of the automatic stay to a contract that ATI has substantially performed although it never should have received it in the first place. Such a result is not consistent with the purpose of or policy behind the automatic stay, and ATI is not entitled to the equitable remedy it seeks from this Court.

Moreover, allowing ATI to avail itself of the automatic stay provision here not only would be inconsistent with the intent of Congress in creating the automatic stay but also is precisely the kind of absurd result that the Supreme Court had in mind in *Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S. Ct. 511, 36 L.Ed. 226 (1892), when it held:

> It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers. ...This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

ATI's application for a TRO also should be denied in the circumstances of this case because, as CBP correctly found and stated in its Determination and Findings overriding the automatic stay (the "Override Decision"), authorizing performance of the Contract by DTI "is in the best interests of the United States" within the meaning of 31 U.S.C. § 3353(d)(3)(C)(i)(I). Indeed, implicit in the Override Decision is CBP's conclusion that the protest ATI filed at GAO which triggered the automatic stay is frivolous and, therefore, in a circumstance where, as here, the disappointed offeror files a protest in order to buy a few more months of performance via the

automatic stay, it is self-evident that an override is in the best interests of the United States. Such a use of the automatic stay is not what Congress intended.

Indeed, what the Override Decision states regarding ATI's principal argument in support of its protest to GAO is very telling:

> The [ATI] protest matter pertaining to the cost/technical tradeoff is without merit since the tradeoff analysis was well documented as shown on pages 7-8 of the attached Price Negotiation Memorandum (PNM) and strongly supported the award decision. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

As shown in the Override Decision, the "significantly more" that CBP is not willing to pay ATI for that minor difference in non-price factors is $103,196.27 *per month* for each month beginning September 1, 2006.

Equally telling is ATI's use of selected excerpts from the RFP to support its contention that CBP was more concerned with obtaining superior technical and performance capability as demonstrated by past performance than with making an award at the lowest cost or price. However, ATI fails to refer to the following provision of the RFP which states in its entirety:

> A.40 BASIS OF AWARD (TRADE-OFF ANALYSIS)
>
> Award shall be made to the offeror(s) whose proposal(s) are determined to best meet the needs of Government after consideration of all factors- i.e., provides the "best value". "Best value" is defined as the procurement process that results in the most advantageous acquisition decision for the Government and is performed through an integrated assessment and trade-off analysis between cost or price and non-cost or price factors (i.e., technical evaluation factors and past performance.)
>
> The basis for the award will be a detailed, integrated evaluation by the Government of how well the proposals satisfy the evaluation criteria specified herein. Accordingly, the

> Government may make award to other than the lowest priced offeror(s) or other than the offeror(s) with the highest rating for non-cost or price factors.
>
> *The Contracting Officer or Source Selection Authority has the right to determine whether two or more proposals are "substantially equal" or whether any differences in the rating of non-cost or price factors are "significant". Between proposals rated substantially equal, cost/price will become a more significant factor. Between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating, nor is the Government willing to forego a significant difference in the non-cost or price factors rating in exchange for a small cost/price differential.*

(Klein Decl. ¶10) (Emphasis added).

In addition to the very large cost differential, ATI's contentions regarding Past Performance do not withstand scrutiny. After all, the corrective action CBP took following DTI's GAO protest involved ATI and DTI submitting only final price proposal revisions. No revisions to technical proposals were accepted. CBP considered only price because all other factors were deemed to be relatively equal among bidders. There was only a small variance in technical scores (9%) and no variance in Past Performance. (*Id.* ¶7)

It must be noted that the Past Performance scores for ATI were based on just 15 months of performance, whereas DTI's evaluation was based on 10 years of performance. Indeed, throughout all the years of its performance of these maintenance service contracts for CBP, DTI has consistently received outstanding performance reports. (*Id.* ¶8)

Under these circumstances, ATI's protest, which challenges how CBP exercised its considerable discretion in conducting the tradeoff analysis in accordance with the above-quoted provision of the RFP, demonstrates the frivolousness of the protest and confirms the Override Decision was issued "in the best interests of the United States".

An additional reason why ATI's application for a TRO ought to be denied is that it has utterly failed to establish any irreparable harm. Two of the harms it relies on, a lost opportunity to compete and a loss of competitive advantage, are really the same thing and in any event do not constitute irreparable harm. In *SDS International, Inc. v. United States*, 55 Fed. Cl. 363 (2003), this Court rejected the claim made by a plaintiff similarly situated to ATI based on the contention that once its contract expires and a successful offeror begins work, the disappointed bidder will never be reinstated as the contractor even if it were successful in its protest at the GAO. The Court held "that such an allegation does not rise to the demonstration of specific irreparable injury of a type necessary to grant plaintiff's motion for a TRO." 55 Fed. Cl. at 365.

Similarly, in *Sierra Military Health Services, Inc. v. United States*, 58 Fed. Cl. 573 (2000), this Court rejected as speculative and failing to demonstrate irreparable harm the claim that unless the agency's override of the automatic stay provision was enjoined, the disappointed bidder would be irreparably harmed by its loss of the incumbency advantage:

> In 31 U.S.C. § 3554(b)(1), Congress provided that the Comptroller General shall make recommendations in a corrective action "without regard to any cost or disruption from terminating, recompeting, or reawarding the contract. . . . Thus, plaintiff will not be unduly harmed by a failure to stay performance during the transition period.

(at 583).

*Sierra* also effectively rejected each of the other harms claimed by ATI as the basis for meeting the irreparable harm prong for a TRO:

> Initially, Sierra claimed that it would be irreparably harmed if the override is not enjoined because it would suffer various financial harms. Among the injuries alleged were the loss of its employees, . . . and problems with its beneficiaries and subcontractors. However, these are not the types of harm that constitute irreparable injury. It is clear that these potential losses are primarily monetary. While these losses may be substantial, they are not irreparable. . . . Only economic loss that threatens the survival of a

> movant's business constitutes irreparable harm. Moreover, it is settled law that no assurance exists that a contractor will receive an award. It is clear that most of plaintiff's alleged harms result not from a lack of opportunity to compete for the contract, but from the loss of the actual contract. . . .

(at 582) (Internal quotations and citations omitted).

Even if the categories of harm alleged by ATI were cognizable as potential categories of irreparable harm, which, under applicable law, they are not, ATI's claims would fail here for lack of proof and because they are at once illusory and speculative. For example, the statement that if ATI's current contract does not continue beyond August 31, ATI's reputation with OEMs (Original Equipment Manufacturers) will be damaged is totally unsupported and is contrary to logic. ATI has no contractual right under its existing contract for any further orders from CBP beyond August 31. Moreover, the reputational harm ATI contends it will suffer is not the result of the Override Decision but rather because it was the unsuccessful offeror in response to the RFP. Whether ATI ceases to perform under its existing contract because DTI replaces ATI on September 1, 2006 or in January 2007 has precisely the same impact on ATI's reputation. In short, ATI's reputation will be damaged unless it wins its protest and ultimately is awarded the Contract. In the words of *Sierra*, "plaintiff's alleged harms result not from a lack of opportunity to compete for the contract, but from the loss of the actual contract." 58 Fed. Cl. at 582. The TRO ATI seeks cannot impact that outcome.

That ATI's claims of irreparable harm lack any evidence upon which this Court could rely is underscored by ATI's naked averment that it "also *may* be liable to one of its OEM subcontractors, because ATI is required to give 30 days advance notice of discontinuance of maintenance." (Fauser Decl. ¶ 29) (Emphasis added). Tellingly, Mr. Fauser does not identify the subcontractor, provide any supporting documentation establishing that ATI has a contractual obligation to this unidentified subcontractor, or provide any details whatsoever. In this regard,

the Court should note not only that ATI admits that it has no task orders from CBP beyond August 31, 2006, but also that if ATI has in fact contracted with subcontractors for any services beyond August 31, 2006, it did so at its own risk. The contract ATI is currently performing is an Indefinite Delivery Indefinite Quantity type contract as to which CBP has no further obligation to order any additional services because CBP already has ordered more than the minimum requirement. With Indefinite Delivery Indefinite Quantity type contracts, there is always the possibility CBP will not order additional services above the minimum requirement.

ATI's attempt to establish irreparable harm falls far short of the legal requirement that "[s]uch injury must be shown in specific terms and it must also be shown that the harm to [the disappointed bidder] outweighs any harm to the United States." *SDS International, Inc., supra,* 55 Fed. Cl. at 365.

This Court also needs to consider the balance of the hardships as between ATI and DTI. As to DTI, following notice of the award of the Contract, DTI put in place agreements to start performing the Contract on September 1, 2006, and these agreements provide guarantees of OEM maintenance coverage as specified in the Contract. Furthermore, DTI also has taken the necessary steps to ensure 100% availability of the CBP Data Center Equipment. (Klein Decl. ¶12).[3] Indeed, the hardships and harm as between ATI and DTI are the same and therefore do not support ATI's application for extraordinary relief.

---

[3] Contrary to ATI's assertions, the background investigations requirement of the Contract does not constitute an impediment to DTI's ability to begin performance as scheduled on September 1, 2006. DTI currently employs 3 individuals who have CBP clearances that can be activated prior to September 1. Moreover, the Contract includes Clause A.25 titled "Security Procedures (May 2003)," which provides that "[a]ll personnel employed by the Contractor or responsible to the Contractor for the performance of work hereunder shall either currently possess or be able to favorably pass a background investigation." All of DTI's personnel meet these criteria. (Klein Decl. ¶15).

Another flaw in ATI's application for a TRO is its failure to make any mention of the bond requirements specified in RCFC 65(c), which states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Therefore, in the event that the Court were to conclude that ATI is entitled to a TRO, any such TRO would have to be conditioned upon ATI posting security in the amount determined by this Court.

For each and all of these reasons, Digital Technologies, Inc. urges the Court to deny ATI any form of injunctive relief and to dismiss the Complaint.

Respectively submitted,

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6802
202-776-2726

Counsel for
Digital Technologies, Inc.

Dated: August 25, 2006

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, | ) | |
| v. | ) | No. 06-599C |
| UNITED STATES, Defendant. | ) | |

**DECLARATION OF JOHN KLEIN**

I, John F. Klein, pursuant to 28 U.S.C. § 1746, state as follows:

1. I am a member of the Board of Directors of Digital Technologies, Inc. ("DTI") and its President and have held that position since July 2000. I have overall responsibility for all of DTI's business, including its contracts with agencies of the United States Government.

2. DTI is a family-owned and family-operated business, incorporated in Virginia in 1984, which provides, among other products and services, Information Technology products, Systems Integration, Technology Deployment, Multi-Vendor Installation, Software Support, and Hardware Maintenance. DTI's customers include private companies, state and local governments and Federal agencies. One of those federal agencies is the Bureau of Customs and Border Protection of the United States Department of Homeland Security ("CBP"). In fact, CBP has been a customer of DTI since 1994.

3. I have reviewed the papers filed with the Court by Automation Technologies, Inc. ("ATI") in support of its application for a temporary restraining order and provide this Declaration in support of DTI's opposition to that application.

4. DTI was the successful offeror in response to RFP HSBP 1005R0541 issued by CBP (the "RFP") and was awarded Contract No. HSBP 1006D01287 (the "Contract"), which DTI is scheduled to begin performing on September 1, 2006.

5. DTI received its first award from CBP for the maintenance of IT Equipment installed at the Newington Data Center in 1994. This award was followed by six additional awards, which, including option years, covered the next ten years, through June 2004.

6. ATI was awarded an 8(a) set-aside contract by CBP for the period beginning July 2004. CBP requested DTI to perform the maintenance support for three months, from July 2004 through September 2004, to facilitate the change in contractors. DTI provided the requested support through September 2004, and ATI assumed sole responsibility for the contract in October 2004.

7. A new Solicitation was issued by CBP on September 30, 2005, with responses due on October 11, 2005. When ATI was awarded the resulting contract for the subsequent period beginning January 2006, DTI filed an agency protest of the award with CBP and, upon denial of that protest by CBP, DTI filed a protest with the General Accountability Office (GAO"). However, ATI is incorrect in claiming that CBP unilaterally decided to take corrective action in response to DTI's protest, as a result of which GAO dismissed DTI's protest as academic. Indeed, CBP denied DTI's protest when it was submitted in the form of an agency protest. However, when CBP engaged in an Alternative Dispute Resolution ("Outcome Prediction") conducted by

the GAO, the GAO made an Outcome Prediction in which it advised CBP that it "appeared the agency [CBP] improperly entered into discussions with only one offeror" in violation of procurement regulations. Following that Outcome Prediction, CBP negotiated an agreement with GAO regarding the corrective action to take. The corrective action was that CBP agreed to revise its cost evaluation of the offers submitted by DTI and ATI and conduct another round of offers, considering only price as all other factors were deemed to be relatively equal among offerors. There was only a small variance in technical scores (9%) and no variance in Past Performance. GAO then dismissed DTI's protest as academic.

8. With regard to Past Performance, it must be noted that the Past Performance scores for ATI were based on just 15 months of performance, whereas DTI's evaluation was based on 10 years of performance. Indeed, throughout all the years of its performance of these maintenance service contracts for CBP, DTI has consistently received outstanding performance reports.

9. Using selected excerpts from the RFP, ATI contends that in awarding the Contract, even after having determined that all factors other than price were deemed to be relatively equal among offerors, CBP nonetheless was more concerned with obtaining superior technical and performance capability as demonstrated by past performance than with making an award at the lowest cost or price.

10. In making that contention, ATI also fails to refer to the provision of the RFP that states in its entirety:

> A.40 BASIS OF AWARD (TRADE-OFF ANALYSIS)
>
> Award shall be made to the offeror(s) whose proposal(s) are determined to best meet the needs of Government after consideration of all factors- i.e., provides the "best value". "Best value" is defined

> as the procurement process that results in the most advantageous acquisition decision for the Government and is performed through an integrated assessment and trade-off analysis between cost or price and non-cost or price factors (i.e., technical evaluation factors and past performance.)
>
> The basis for the award will be a detailed, integrated evaluation by the Government of how well the proposals satisfy the evaluation criteria specified herein. Accordingly, the Government may make award to other than the lowest priced offeror(s) or other than the offeror(s) with the highest rating for non-cost or price factors.
>
> The Contracting Officer or Source Selection Authority has the right to determine whether two or more proposals are "substantially equal" or whether any differences in the rating of non-cost or price factors are "significant". Between proposals rated substantially equal, cost/price will become a more significant factor. Between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating, nor is the Government willing to forego a significant difference in the non-cost or price factors rating in exchange for a small cost/price differential.

11. When CBP evaluated the revised price proposals submitted by DTI and ATI, CBP awarded the Contract to DTI on July 26, 2006, to begin on September 1, 2006.

12. Following notice of the award of the Contract, DTI put in place agreements to start performing the contract on September 1, 2006, and these agreements provide guarantees of OEM (original equipment manufacturer) maintenance coverage as specified in the Contract. Furthermore, DTI not only has over 22 years of experience in the maintenance and support of OEM equipment, but also actually began working with the applicable OEMs in August 2005 in the preparation of DTI's proposal in response to the RFP.

13. Having performed maintenance service in an outstanding manner for CBP since 1994, DTI has taken the necessary precautions to ensure 100% availability of the CBP Data Center Equipment.

14. With respect to ATI's claim of irreparable harm, ATI admits that it has no task orders from CBP beyond August 31, 2006. Therefore, ATI has not contracted for any services from its subcontractors beyond August 31, 2006, or, if ATI did so, that was at its own risk because the contract under which it is currently performing is an Indefinite Delivery Indefinite Quantity type contract. Because CBP has already ordered more than the minimum requirement under that contract, CBP has no further obligation to order any additional services. With Indefinite Delivery Indefinite Quantity type contracts, there is always the possibility the Government will not order additional services since there is no minimum requirement. This risk is a business risk of the contractor and must be borne by the contractor.

15. Contrary to ATI's assertions, the background investigations requirement of the Contract does not constitute an impediment to DTI beginning its performance as scheduled on September 1, 2006. DTI currently employs 3 individuals who have CBP clearances that can be activated prior to September 1. Moreover, the Contract includes Clause A.25 titled "Security Procedures (May 2003)," which provides that "[a]ll personnel employed by the Contractor or responsible to the Contractor for the performance of work hereunder shall either currently possess or be able to favorably pass a background investigation." All of DTI's personnel meet these criteria.

Executed on this 25th of August, 2006, at Sterling, Virginia.

John F. Klein