Levin Sole-Source Amendment

Mr. Chairman before I conclude I would like to mention one section of this bill that has now been removed, since it was enacted into law last summer in another bill.

S.272, the Small Business Notice Act, signed on August 11, 1983, included language I had attempted to have enacted for several years. The Levin sole-source amendment requires that any time the government intends to procure on a sole-source basis on the grounds that no other business is capable of producing an item, the government must publish notice in the Commerce Business Daily stating intent to make a sole-source award, but inviting any interested party to respond to the listed office, should they believe their firm could compete for the proposed contract.

A second prong in this Levin sole-source language requires sign-off on the contracting officer's decision to go sole-source by the head of the procuring activity. This sign-off requirement operates on all procurements in excess of a certain threshold: $1 million in the first year of operation. $500,000 in the second year; and $300,000 in the third year. At the end of that time the conferees reserved the right to look at lowering that threshold to the $100,000 level. I think this language will play a critical role in supplementing what we do here on these bills because it should make it more difficult to continue doing business as usual in government procurement.

Conclusion

We are asking the American public to foot an enormous bill for government procurement, nearly 80% of that amount within the Department of Defense. We owe it to the public and to American business to do no less than these two things: spend these awesome amounts sensibly and sanely, never failing to grasp every conceivable opportunity to ensure that our procurement practices are sound; and give every business in this land a



meaningful opportunity to compete for these dollars, rather than funnelling precious taxpayers funds to a chosen and unchallenged few.

I again commend this Committee for its work in this area and for having this hearing. I believe you have before you the product of long and thoughtful consideration and hope you will see fit to report this bill or some similar bill in the near future. Thank you.

Mr. BROOKS. Thank you very much.

Senator, how would you respond to the assertion that competition in contracting legislation is just not needed because the executive branch is taking care of the problem?

Mr. LEVIN. The executive branch has been taking care of the problem for too many decades. They haven't gotten very far with it. They need prodding. And I know how tough it is. It is tough to change. There's a momentum. There is a built-in inertia in a bureaucracy. I don't care if it is the Defense Department or another department. There is no use picking on one department. All big agencies, all big institutions change slowly. They have been doing things this way for years and years and decades and decades. They will only change if they are prodded. I believe it very, very deeply. I have been hitting my head against this wall for about 5 years on the Senate side, and they have got to be prodded. They have got to see changes in law.

The $100,000, $500,000 is a perfect example of it. We let a whole lot of contracts off the hook when we made that change. We have to change that law. We have got to change the competition rules to provide fewer holes, exemptions, and exceptions to the competition, and I think that there is some awareness at long last on the need for competition as a general principle over at the DOD, but in terms of specifics, changing specifically the way we do things, we are going to have to make those changes. I don't think they are institutionally capable of doing so.

Mr. BROOKS. Mr. Horton.

Mr. HORTON. Thank you very much, Mr. Chairman.

Carl, we are very honored to have you before our committee. Sitting right next to you is another stalwart in the procurement field, Senator Lawton Chiles. I worked with him on the Procurement Commission, and I know he is very much concerned about these same problems. I have used that allen wrench back in my congressional district. It's very helpful to get across the point about competitive procurement.

I don't know if you were in here when I read page 9 of the testimony of the Department of Defense. You ought to get a copy of that because this will go along great with the allen wrench to explain the problem. It says, "Another area where we found a problem in pricing, particularly small value items, was in contractor cost accounting practices. A number of contractors utilize cost accounting methods for costing parts on an item basis rather than a value basis. Each item, regardless of its material and direct labor costs, is allocated the same cost for material handling, overhead, general and administrative expenses, et cetera. A 50-cent part is burdened with the same cost as a $1,000 part. This gives the appearance of a low value part being overpriced and higher value parts being underpriced. The net total cost to the Government for all parts purchased is the same."

That's really good. But I think we are on the same track. I am pleased with what you have done in the Senate. And I think what we are doing over here with this bill is to focus attention on this problem of competition. I think we need that 2 by 4, and that is what this legislation is designed to do.



Well, thank you for your testimony and for your efforts in this field.

Mr. LEVIN. If I could just add one very quick comment on that. It is important that we also know, that our buyers know what it is they are buying. This process, as described on that page, is unintelligible, unaccountable, irresponsible——

Mr. HORTON. Incredible.

Mr. LEVIN [continuing]. Incredible. It simply is an invitation to unaccountability. That's what it amounts to. You don't know what has been added in value to anything when you lump it all together that way. We have to do a lot of other things, and I want to just add one other thought. One of the things we have to do is make sure our buyers know what it is they are buying. Just a very simple thing. What is it that they are buying? Our buyers don't know what they are buying. They get some engineering description of a part with a part number. We need computer capability; we need software capability; we need data packages. We've got to put our buyers in the position where they know they are buying a 12-cent allen wrench. It will help. They don't know it now. They are buying something with a technical name they never heard of, and a part number with 12 digits on it.

If they could see on a screen or a picture in front of them what that is that they are buying, it is nothing more then an allen wrench or a screwdriver, I think we'll see some real improvements.

Mr. HORTON. That is too simple.

Mr. BROOKS. Mr. Burton.

Mr. BURTON. I just have one quick comment. I appreciate the Senator's efforts—both of your efforts in the Senate, and we will try to help you out here in the House.

I thought for sometime that all the services ought to have coordinated buying practices, and with the computers that we have available today, they ought to be able to do that with very little difficulty. So, I support what you just said.

Mr. BROOKS. Thank you, Mr. Burton.

Thank you, Senator. We are grateful for your effort and your leaderhip over there on this program. It needs to be done. We have about 8 minutes to vote; so, we are going over to do that.

Senator Chiles, can you wait 10 minutes? We'll come right back.

Mr. CHILES. Certainly. I await your pleasure.

Mr. BROOKS. Thank you, Senator.

[Recess taken.]

Mr. BROOKS. We will reconvene.

Our next witness is the very distinguished and able Senator from Florida, Senator Lawton Chiles, Jr. He is a longtime advocate for increased competition in Government procurement, and much of H.R. 5184, the bill we are considering today, is based on the Senator's earlier effort when he chaired the Federal Spending Practices and Open Government Subcommittee of the Senate Governmental Affairs Committee.

Senator Chiles is widely respected for his expertise in the procurement field and we appreciate having him here today. Please proceed.

**STATEMENT OF HON. LAWTON M. CHILES, JR., A SENATOR IN CONGRESS FROM THE STATE OF FLORIDA**

Mr. CHILES. Thank you very much, Mr. Chairman, Congressman Horton, Congressman Clinger, I am delighted to be here. It is always a pleasure to testify before you, Mr. Chairman, particularly when I have something positive to say or good to say about a bill you are sponsoring.

Most of the good fortune I have had in passing any legislation since I have been in the Senate these past 14 years has been as a result of working with your committee.

The Sunshine Act, the original Office of Federal Procurement Act, its reauthorizations, the Grant and Cooperative Agreement Act, and the Paperwork Reduction Act are all bills which became law through the efforts of you, and Congressman Horton, and the members of your committee.

Laws tend to take on a life of their own once they leave Congress and get into the hands of the executive branch, but I believe that some of those legislative accomplishments have contributed substantially to public confidence in Government, and they have saved the taxpayers some money.

I am here today because I think the introduction of H.R. 5184 presents another opportunity to save the taxpayer billions of dollars. I certainly want to support and encourage the initiative.

Frank and I served on the Procurement Commission back in 1971, and when the Commission reported in 1971, Federal procurement amounted to $55 billion. It is now some $160 billion. During those 12 years, it has tripled, but the major recommendations of that Commission are as valid today as they were then.

The Commission's first recommendation was to establish a central manager and focal point for procurement policy. We did that with the creation of the Office of Federal Procurement Policy.

The second recommendation was to reform the statutory framework for the Government's business practices. A single procurement system was to replace the two basic statutes for domestic and defense procurement that exist today.

Mr. Chairman, the experts have always said you are talking about 5- to 10-percent savings that could be made if we reform the procurement system by working out of a single procurement statute; 5 to 10 percent of $160 billion is anywhere from $8 to $16 billion and that is a lot of money.

H.R. 5184 is responsive to the Commissions' second recommendation. It is an important bill.

I spend a lot of time now on the Budget Committee looking for savings, and this kind of reform measure ought to be put before the Congress, and we ought to pass it into law. We are always talking about waste, fraud, and efficiency savings. The Grace Commission has received a tremendous amount of notoriety, and some of the things that the Grace Commission talks about is certainly related to procurement practices. They didn't specifically encourage congressional support for the big buck savings that could be made in a procurement reform like this, but I think it certainly goes to the heart of what that Commission is talking about. I hope the administration will see the potential and recognize the opportunity that H.R. 5184 provides.



The Senate, under Senator Cohen's leadership, has passed S. 338. It is a comprehensive procurement reform bill. Senator Cohen has put a lot of hard work into that bill. It has bipartisan support in the Senate. It builds much upon the work done in the past by the Committee on Governmental Affairs of the Senate.

This committee's initiative behind H.R. 5184 now puts procurement reform in a higher place on the congressional agenda than it has been since World War II.

I want to plant a seed, Mr. Chairman, by respectfully suggesting that you "court" and "marry" these two bills. I think that is what should be done. And also, as you know, Mr. Chairman——

Mr. BROOKS. A marriage of love, not a shotgun wedding.

Mr. CHILES. I think it could be one of convenience to the taxpayer though as well. I think it might be love, but I think it could be one of convenience.

I think you also know, Mr. Chairman, that since the Commission reported, I have introduced and tried to pass a procurement reform bill in at least three Congresses, and the change that we had in the Senate in 1980 sort of put an end to my persistence in that regard.

Senator Danforth and now Senator Cohen have picked up procurment jurisdiction. But what we were trying to do in those bills was to create a single procurement system which would simplify the two that we now have. And try to replace the redtape and paperwork with more suppliers and competition. We tried to stress the need for functional specifications and to have them mandated in order to eliminate detailed specifications.

It is my firm conviction that this step is essential if we are to increase small business and minority business participation, and if we are to bring more competition into the marketplace.

Second, we tried to crack down on the use of noncompetitive and sole-source contracts. Stronger requirements for full and open competition are critical. The Government stands to get a better product at a lower price if we have this kind of competition. And there are reduced opportunities for cost overruns and buy-ins.

Moreover, genuine competition is the best regulator I know of. Continually we are saying that you've got to have more auditors. Put more auditors out there. And every time we do that, we find that a certain number of contractors say, we are tired of the paperwork and we are going to quit the process. And so we get fewer bids and we get more auditors, and somehow we don't get the best prices.

I think we have got to change and have that competition at the front end. Get those companies bidding against each other. And they also tell on each other, as we know, when things aren't going right if you have people that are looking for bids.

After a while a scandal seems to pop up and we go for a quick fix. We fix that particular little scandal and then 2 years from now, 1 year from now, something the same way is happening over and over, or we have assigned some more auditors, and we've put in some more paperwork to try to control it, and that doesn't seem to be able to do it either.

Rigorous competition at the front end, I think, would solve a lot of those problems. Congress has a choice. We can continue a piecemeal procurement reform process or we can go for something major, as you have done in H.R. 5184, and as I think the Senate bill has done. I think—I know that overall reform would provide for more effective and clearly understood competition.

Now, turning to the bid protest issue. There have always been bid protesters. And not all are going to be merely disappointed bidders. But the present bid protest system that we have now with GAO doesn't perform very well. It takes too long to reach a decision and extremely few protests are upheld. I don't think that the business community has any faith basically in the GAO role now. And I think that you've got to—you've got to put some teeth into the GAO role. There is a question as to whether we can go too far in that, but I would rather try it and give the GAO some real authority to see how that would work as opposed to the way we have been going and virtually doing nothing. People have no faith in the present system. They don't think it is going to work.

I went further than the Procurement Commission recommended on that question in my bills. I chose to authorize the Comptroller to issue binding decisions and to stop a contract award in the face of a legitimate bid protest.

If you permit decisions only after the fact, and after the bid is completed, nothing really happens. GAO may say that this shouldn't have happened in the past. When somebody knows they were clearly wronged, and then doesn't get redress, I think they have twice the grievance they had if they had been wronged and chose not to protest.

I note your bill adopts my approach. I know that is going to be controversial. But I support it. I think we ought to try that. And I would just conclude in saying I feel sometimes trying to accomplish broad procurement reforms is harder than a lot of things that we try around here. It takes more time. I think your initiative is the same direction as the Senate bill and I just encourage you to get your bill out and fast, and let's see if this could be a year that we do something major in this arena of procurement reform.

Mr. BROOKS. Thank you very much, Senator.

I am just going to ask you one question. How would you respond to the assertion that full and open competition is too expensive, too time consuming, too much trouble for Federal agencies to use?

Mr. CHILES. Well, I think we just have to look at the alternative of what they have been doing. It hasn't been working. The public lacks total confidence in it. We know that there has been tremendous waste and inefficiencies. We know that we have not been getting the best product for the Government, and certainly not at the best price. And I believe, as you know, a lot in open processes whether it is in meetings or whatever, and I have a lot of trust that open competition will be a solution to some of our problems.

Mr. BROOKS. Thank you, Senator. Mr. Horton.

Mr. HORTON. Thank you, Mr. Chairman.

Lawton, it's nice to have you before the committee. One of the most pleasant experiences I have had was serving with you on that Procurement Commission, and I think that as a result of that Commission's work, a lot of attention has been given to problems in Government procurement.



Mr. CHILES. In some ways, a freshman Senator learned too much about procurement and I've been handicapped with it ever since.

Mr. HORTON. You have done an excellent job on it. We have the executive director of the Commission testifying next. He is now heading up the Office of Federal Procurement Policy—Don Sowle.

I want to thank you, not only for your comments here, but for your steadfastness in following up on the procurement matters over in the Senate. I think your work has been very helpful. You have already passed that bill in the Senate, and we have something comparable moving. I hope that next week we can report it out of this subcommittee and then very shortly thereafter out of the full committee, and then have an opportunity to get to conference with you. And, frankly, I think that with what you have got in your bill and what we have here, and with what we will probably do by way of modification here, we will have a piece of legislation that could be very helpful——

Mr. CHILES. I think so.

Mr. HORTON [continuing]. In opening up this door of competition. I think that both you and Senator Levin have emphasized that front end, open competition is going to help a lot, and we'll save billions of dollars.

So, thanks for your testimony and thanks for coming over.

Mr. CHILES. Thank you.

Mr. HORTON. And thanks for waiting for us while we had to go over and vote.

Mr. CHILES. I was happy to do that.

Mr. BROOKS. Mr. Clinger.

Mr. CLINGER. I have no questions.

Mr. BROOKS. Thank you, Lawton; good to see you.

Our next witness is Don E. Sowle, the Administrator for Federal Procurement Policy. He is accompanied by Patricia Szervo, Associate Administrator for Procurement Law and Legislation, and Leroy Haugh, Associate Administrator for Policy Development.

Mr. Sowle, it is nice to have you with us, again. We will take your statement for the record. We are going to finish one more witness before we adjourn for lunch.

And we will accept your statement for the record and appreciate your comments.

## STATEMENT OF DONALD E. SOWLE, ADMINISTRATOR, OFFICE OF FEDERAL PROCUREMENT POLICY, ACCOMPANIED BY PATRICIA SZERVO, ASSOCIATE ADMINISTRATOR FOR PROCUREMENT LAW AND LEGISLATION, AND LEROY HAUGH, ASSOCIATE ADMINISTRATOR FOR POLICY DEVELOPMENT

Mr. SOWLE. Would you like to have me abbreviate the statement, Mr. Chairman?

Mr. BROOKS. Yes.

Mr. SOWLE. All right, sir.

I would like to comment on H.R. 5184. Before I do that, Mr. Chairman, I would like to really commend both you and Mr. Horton for your continued support of OFPP and procurement

reform. As we all know, you were very instrumental in getting OFPP reauthorized last fall. Your support of procurement reform has been a major factor, I think, in the particularly cooperative working relationships between OFPP and the committee staff.

I would like to be very specific there, Bill Jones and Jim Lewin, John Duncan and Steve Daniels have been very helpful and very cooperative in working with us, and we find it a pleasure to work with them.

H.R. 5184 would revise the procedures for soliciting and evaluating bids and proposals for Government contracts with the objective of significantly increasing the use of competition in Federal procurement. We certainly agree with the need to restrict the use of noncompetitive procurement and increase the use of competition wherever practical.

We have long recognized that the current statutes, the Armed Services Procurement Act and the Federal Property and Administrative Services Act, are outmoded and need revision.

When Congress reauthorized OFPP in 1979, based on your bill, H.R. 3763, it directed the preparation of a uniform Federal procurement system proposal. This proposal was submitted as an administration proposal, not just an OFPP proposal, in February 1982 after more than a year of concentrated study.

One of the four major themes of that proposal is new concepts in competition. We proposed a basic requirement for competitive procurement and a limited number of conditions under which noncompetitive procurements could be authorized. This would serve the dual purpose of simplifying the procurement process by eliminating unnecessary paperwork and giving contracting officers more flexibility in applying competitive procedures. And, second, it would prescribe for the first time a limited number of circumstances under which noncompetitive procurement could be justified.

There are no restrictions on noncompetitive procurements in the current statutes, as you know, Mr. Chairman. Thus, we feel there is a real need for statutory changes which will clearly restrict these types of procurements and provide a basis for giving greater visibility to such procurements. We therefore welcome the emphasis in H.R. 5184 on this point.

We are, and have been, working constantly to improve our record of competition. Unfortunately, the numbers that you mentioned this morning indicate that they are still going in the wrong direction. But I would like to point out that President Reagan, in his memorandum in August 1983, a copy of which is attached to my statement, and which I would like to have included in the record, stated his strong support for competition, called on the agency heads to assure that competition is the preferred method of procurement, and instructed me to issue a policy directive.

We issued that directive in February of this year in which we set forth seven circumstances under which the use of noncompetitive procurement may be justified.

This policy directive culminated over 2 years of effort and extensive discussions not only with the executive branch agencies but with congressional staffs and industry.

No one was in 100-percent agreement, I would like to add there, Mr. Chairman. Any time you talk about these kind of things, we



can't get everybody to agree 100 percent, but the seven circumstances in our policy letter permitting noncompetitive procurements recognized that there are situations in which true marketplace competition either does not exist or is not feasible.

Mr. Chairman, we appreciate your interest in procurement reform and the objectives expressed in your bill. Statutory support is a vital ingredient of our overall program of procurement reforms. However, while we agree with the stated objective of H.R. 5184 to increase competition, we do not feel that the provisions of the bill will fully achieve other goals of our reform program such as simplification of the procurement process and providing more flexibility in the process.

Some requirements of the bill, such as the number and levels of approval for noncompetitive procurements, could be counterproductive to an efficient and effective procurement system, and could dilute the responsibility and authority of the procurement executive.

As you know, Mr. Chairman, the procurement executive is the focal point in each agency responsible to the agency head for management of the procurement function.

These executives are now called for in the bill which reauthorized OFPP last fall, and also by the President's Executive Order 12352. One of the principal responsibilities of that position is advocating more competition in procurement and seeking more opportunities for competition.

One of our problems in the past in seeking to obtain more competition has been the lack of advance planning, market research, performance specifications, and, in general, closer coordination of the technical and logistical disciplines which work with procurement. It is noted that H.R. 5184 does provide some strengthening of this relationship.

Too often, however, the contracting officers are not involved in the early planning phases when many critical decisions are made which inhibit their flexibility to ensure the most effective and efficient competitive atmosphere.

I mention these things because I think it is important for all to understand and be aware that contracting is only one of several disciplines involved in obtaining competition. Procurement people can't ensure competition by themselves; they require cooperation from others involved in the acquisition process.

It is also important to recognize some of the major efforts that we have underway, as I have just indicated, in response to earlier initiatives by your committee, to enhance the role of the contracting officer and improve the entire procurement process. I do believe, Mr. Chairman, that any legislation must provide a reasonable number of circumstances, such as those contained in our policy letter and in the administration's proposal, under which noncompetitive procurements can be justified.

In summary, we need statutory authority to achieve our objectives. We agree with the emphasis in your bill on increasing competition and controlling noncompetitive procurements, but we do have some concern that other aspects of the bill may introduce unnecessary complexity and paperwork into the system. Therefore, we must respectfully oppose the bill as it is currently drafted. We

Case 1:06-cv-00599-MBH Document 17-5 Filed 08/29/2006 Page 6 of 10



think some changes can be made and we would be very pleased to work with the committee staff to meet these objectives.

We welcome your support, Mr. Chairman, and that of your committee, to achieve some real and lasting reforms in the whole procurement process.

[Mr. Sowle's prepared statement follows:]



STATEMENT OF
DONALD E. SOWLE
ADMINISTRATOR FOR FEDERAL PROCUREMENT POLICY

MR. CHAIRMAN, I APPRECIATE THE OPPORTUNITY TO COME HERE THIS MORNING TO TESTIFY ON H.R. 5184. I HAVE A BRIEF STATEMENT, BUT BEFORE I PROCEED I WANT TO COMMEND BOTH YOU AND MR. HORTON FOR YOUR CONTINUED SUPPORT OF OFPP AND OF PROCUREMENT REFORM. YOUR SUPPORT WAS INSTRUMENTAL IN GETTING OFPP REAUTHORIZED LAST FALL, AND I'M SURE HAS BEEN A MAJOR FACTOR IN THE PARTICULARLY COOPERATIVE RELATIONSHIP BETWEEN OFPP AND THE COMMITTEE STAFF.

H.R. 5184 WOULD REVISE THE PROCEDURES FOR SOLICITING AND EVALUATING BIDS AND PROPOSALS FOR GOVERNMENT CONTRACTS, WITH THE OBJECTIVE OF SIGNIFICANTLY INCREASING THE USE OF COMPETITION IN FEDERAL PROCUREMENT. WE CERTAINLY AGREE THAT WE NEED TO RESTRICT THE USE OF NONCOMPETITIVE PROCUREMENT AND INCREASE THE USE OF COMPETITION WHEREVER PRACTICABLE. WE HAVE LONG RECOGNIZED THAT THE CURRENT STATUTES - THE ARMED SERVICES PROCUREMENT ACT OF 1947 AND THE FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT OF 1949 ARE OUTMODED AND DEFICIENT IN THEIR APPROACH TO COMPETITION.

IN 1979, WHEN CONGRESS REAUTHORIZED OFPP, BASED ON YOUR BILL (H.R. 3763), IT DIRECTED THE PREPARATION OF A UNIFORM PROCUREMENT SYSTEM PROPOSAL. THE ADMINISTRATION SUBMITTED ITS PROPOSAL FOR A UNIFORM FEDERAL PROCUREMENT SYSTEM (UFPS) TO CONGRESS IN FEBRUARY 1982, AFTER MORE THAN A YEAR OF CONCENTRATED STUDY AND ANALYSIS. ONE OF THE FOUR MAJOR

THEMES OF THAT PROPOSAL IS NEW CONCEPTS OF COMPETITION. THE ADMINISTRATION'S PROPOSED NEW APPROACH TO COMPETITION WOULD RECOGNIZE THAT BOTH FORMAL ADVERTISING AND COMPETITIVE NEGOTIATION ARE ACCEPTED METHODS OF COMPETITIVE PROCUREMENT. IT WOULD ALSO ELIMINATE THE CURRENT NEGOTIATION EXCEPTIONS (I.E., EXCEPTIONS TO FORMAL ADVERTISING). AS YOU KNOW, MR. CHAIRMAN, THESE EXCEPTIONS PERMIT NEGOTIATION, BOTH WITH AND WITHOUT COMPETITION, AND EACH REQUIRES A D&F OR DETERMINATION AND FINDINGS. IN THEIR PLACE WE PROPOSED A BASIC REQUIREMENT FOR COMPETITIVE PROCUREMENT, AND A LIMITED NUMBER OF CONDITIONS UNDER WHICH NONCOMPETITIVE PROCUREMENT COULD BE AUTHORIZED. THIS WOULD HAVE SERVED THE DOUBLE PURPOSE OF 1) SIMPLIFYING THE PROCUREMENT PROCESS BY ELIMINATING UNNECESSARY PAPERWORK AND GIVING CONTRACTING OFFICERS MORE FLEXIBILITY IN APPLYING COMPETITIVE PROCEDURES, AND 2) PRESCRIBING FOR THE FIRST TIME A FINITE LIST OF CIRCUMSTANCES UNDER WHICH NONCOMPETITIVE PROCUREMENT COULD BE JUSTIFIED.

THERE ARE NO RESTRICTIONS ON NONCOMPETITIVE PROCUREMENTS IN THE CURRENT STATUTES. THE 17 EXCEPTIONS IN THE ARMED SERVICES PROCUREMENT ACT AND THE 15 IN THE FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT WERE INTENDED SOLELY TO PROVIDE A BASIS FOR <u>COMPETITIVE NEGOTIATION</u> WHEN FORMAL ADVERTISING WAS NOT PRACTICABLE. HOWEVER, THEY HAVE COME TO BE WIDELY USED TO JUSTIFY NONCOMPETITIVE PROCUREMENTS AS WELL. THUS, THERE IS A REAL NEED FOR STATUTORY CHANGES WHICH WILL CLEARLY RESTRICT NONCOMPETITIVE PROCUREMENT AND PROVIDE A BASIS FOR GIVING GREATER VISIBILITY TO SUCH PROCUREMENTS. WE THEREFORE WELCOME THE EMPHASIS IN H.R. 5184 ON THIS POINT.



THE UFPS INCLUDED PROPOSED LEGISLATION IN THE FORM OF AMENDMENTS TO THE ARMED SERVICES PROCUREMENT ACT AND THE FEDERAL PROPERTY AND ADMINISTRATIVE SERVICES ACT WHICH WOULD HAVE MADE THE PROPOSED LIMITATIONS ON NONCOMPETITIVE PROCUREMENT STATUTORY. WE BELIEVE THAT SUCH LEGISLATIVE RESTRICTIONS, ALONG WITH GREATER FLEXIBILITY AND LESS PAPERWORK IN USING COMPETITIVE PROCUREMENT, ARE ESSENTIAL INGREDIENTS IN ESTABLISHING A GOOD PROCUREMENT SYSTEM AND CONTINUING THE PROGRAM OF PROCUREMENT REFORM WHICH IS OF VITAL INTEREST TO BOTH THE CONGRESS AND THIS ADMINISTRATION.

IN THE MEANTIME, THOUGH, WE ARE WORKING CONSTANTLY TO IMPROVE OUR RECORD OF COMPETITION. WE HAVE MOVED AHEAD TO IMPOSE RESTRICTIONS ADMINISTRATIVELY ON NONCOMPETITIVE PROCUREMENT. PRESIDENT REAGAN, BY A MEMORANDUM OF AUGUST 11, 1983, COPY OF WHICH IS ATTACHED, STATED HIS SUPPORT FOR COMPETITION, CALLED UPON THE AGENCY HEADS TO ASSURE THAT COMPETITION IS THE PREFERRED METHOD OF PROCUREMENT, AND INSTRUCTED ME TO ISSUE A POLICY DIRECTIVE. WE ISSUED POLICY LETTER 84-2 ON FEBRUARY 27, 1984, SETTING FORTH SEVEN CIRCUMSTANCES UNDER WHICH THE USE OF NONCOMPETITIVE PROCUREMENT MAY BE JUSTIFIED. THIS POLICY DIRECTIVE CULMINATED OVER TWO YEARS OF CONCERTED EFFORT AND EXTENSIVE DISCUSSIONS, NOT ONLY WITH THE EXECUTIVE BRANCH AGENCIES BUT WITH CONGRESSIONAL STAFFS AND INDUSTRY. THE SEVEN CIRCUMSTANCES IN OUR POLICY LETTER PERMITTING NONCOMPETITIVE PROCUREMENTS RECOGNIZE THAT THERE ARE SITUATIONS IN WHICH TRUE MARKETPLACE COMPETITION EITHER DOES NOT EXIST OR IS NOT FEASIBLE. CONTRACTING OFFICERS WILL BE REQUIRED TO REPORT

Case 1:06-cv-00599-MBH Document 17-5 Filed 08/29/2006 Page 8 of 10



TO THE FEDERAL PROCUREMENT DATA SYSTEM THE PRECISE CIRCUMSTANCE USED TO JUSTIFY EVERY NONCOMPETITIVE PROCUREMENT, SO THAT FOR THE FIRST TIME WE WILL HAVE A GOOD BASIS FOR MONITORING SUCH PROCUREMENTS.

MR. CHAIRMAN, WE APPLAUD YOUR INTEREST AND YOUR OBJECTIVES EXPRESSED IN H.R. 5184. STATUTORY SUPPORT IS A VITAL INGREDIENT OF OUR OVERALL PROGRAM OF PROCUREMENT REFORMS. HOWEVER, WHILE WE AGREE WITH THE STATED OBJECTIVE OF H.R. 5184 TO INCREASE THE USE OF COMPETITION, WE DO NOT FEEL THAT THE BILL WILL FULLY ACHIEVE OTHER GOALS OF OUR REFORM PROGRAM SUCH AS SIMPLIFICATION OF THE PROCUREMENT PROCESS AND MORE FLEXIBILITY IN THAT PROCESS. WE BELIEVE THESE ARE ESSENTIAL IF WE ARE TO BUILD AND MAINTAIN A TRULY BROAD COMPETITIVE ENVIRONMENT. THE BILL TAKES A MAJOR STEP IN RECOGNIZING BOTH SEALED BIDS AND COMPETITIVE PROPOSALS AS VALID FORMS OF COMPETITIVE PROCUREMENT. AT THE SAME TIME, WE BELIEVE THAT SOME OF ITS PROVISIONS WOULD UNNECESSARILY RESTRICT AND DELAY THE PROCUREMENT PROCESS. THESE PROVISIONS APPEAR TO BE CONTRARY TO THE POLICY OF CONGRESS AS STATED IN P.L. 98-191, THE OFPP REAUTHORIZATION ACT TO PROMOTE ECONOMY, EFFICIENCY AND EFFECTIVENESS IN PROCUREMENT, AND THE DEVELOPMENT OF SIMPLIFIED PROCUREMENT PROCESSES.

WE ARE ALSO CONCERNED THAT SOME REQUIREMENTS OF THE BILL, SUCH AS THE NUMBER AND LEVELS OF APPROVAL FOR NONCOMPETITIVE PROCUREMENTS, COULD BE COUNTER PRODUCTIVE TO AN EFFICIENT AND EFFECTIVE PROCUREMENT SYSTEM, AND COULD DILUTE THE RESPONSIBILITY AND AUTHORITY OF THE PROCUREMENT EXECUTIVE. AS YOU ARE AWARE, MR. CHAIRMAN, THE PROCUREMENT



EXECUTIVE IS THE FOCAL POINT IN EACH AGENCY, RESPONSIBLE TO THE AGENCY HEAD FOR MANAGEMENT OF THE PROCUREMENT FUNCTION. PROCUREMENT EXECUTIVES ARE NOW REQUIRED BOTH BY P.L. 98-191 (BASED ON YOUR BILL, H.R. 2293), AND BY E.O. 12352. ONE OF THE PRINCIPAL RESPONSIBILITIES OF THAT POSITION IS CONTROLLING NONCOMPETITIVE PROCUREMENT AND SEEKING MORE OPPORTUNITIES FOR COMPETITION. WE BELIEVE THAT GREATER EMPHASIS AND RELIANCE SHOULD BE PLACED ON THE OPERATIONS OF THE PROCUREMENT EXECUTIVES TO ASSURE MORE COMPETITION.

ONE OF OUR PROBLEMS IN THE PAST IN SEEKING WIDER COMPETITION WAS THE LACK OF ADVANCE PLANNING, MARKET RESEARCH, PERFORMANCE SPECIFICATIONS AND, IN GENERAL, CLOSER COORDINATION OF TECHNICAL AND LOGISTICS DISCIPLINES WITH PROCUREMENT. H.R. 5184 PROVIDES SOME STRENGTHENING OF THIS RELATIONSHIP. MUCH MORE NEEDS TO BE DONE WHICH IS BEYOND THE PURVIEW OF LEGISLATION, BUT MUST BE EMPHASIZED BY AGENCY MANAGEMENT. WE ARE WORKING TO INSTITUTIONALIZE THE ROLE AND RESPONSIBILITIES OF THE PROCUREMENT EXECUTIVE, WHICH INCLUDE A MORE EFFECTIVE ROLE IN THE PLANNING STAGES OF THE PROCUREMENT PROCESS AND PERFORMING THE FUNCTIONS OF THE COMPETITION ADVOCATE. CONTRACTING OFFICERS HAVE OFTEN BEEN THE STEPCHILDREN OF THE ACQUISITION PROCESS. THEY ARE EXPECTED TO FULFILL NUMEROUS STATUTORY AND REGULATORY REQUIREMENTS RELATING NOT ONLY TO COMPETITION, BUT TO MANY NONPROCUREMENT OBJECTIVES AS WELL. BUT, TOO OFTEN THEY ARE NOT INVOLVED IN EARLY PLANNING PHASES WHEN MANY CRITICAL DECISIONS ARE MADE WHICH INHIBIT THEIR FLEXIBILITY TO ENSURE THE MOST EFFECTIVE AND EFFICIENT COMPETITIVE ATMOSPHERE. ONE OF OUR GOALS IN THE UFPS AND IN THE ADMINISTRATION'S REFORM '88 PROGRAM IS BETTER MANAGEMENT OF THE PROCUREMENT PROCESS.

A KEY FEATURE OF THIS IS THE INVOLVEMENT OF THE PROCUREMENT EXECUTIVE AS A FOCAL POINT TO ENSURE EARLIER AND IN-DEPTH INVOLVEMENT OF CONTRACTING PERSONNEL IN THE ACQUISITION STRATEGY. EARLY INVOLVEMENT WILL HELP ENSURE THAT UNNECESSARY RESTRICTIONS ARE NOT PLACED ON PROPOSED PROCUREMENTS. THIS TOTAL EFFORT WILL FACILITATE MORE COMPETITION AND BETTER PRICING, AND BETTER ACHIEVEMENT OF NON-PROCUREMENT OBJECTIVES.

I MENTION THESE THINGS BECAUSE I THINK IT IS IMPORTANT THAT THE COMMITTEE BE AWARE THAT CONTRACTING IS ONLY ONE OF SEVERAL DISCIPLINES INVOLVED IN OBTAINING COMPETITION AND ALSO TO RECOGNIZE THE MAJOR EFFORTS THAT ARE NOW WELL UNDERWAY, IN RESPONSE TO EARLIER INITIATIVES BY YOUR COMMITTEE, TO ENHANCE THE ROLE OF THE CONTRACTING OFFICER AND IMPROVE THE ENTIRE PROCUREMENT PROCESS. THE PROVISIONS OF THE OFPP REAUTHORIZATION BILL HAVE BEEN VERY HELPFUL IN THIS RESPECT.

I BELIEVE IT IS IMPORTANT ALSO, TO SUPPORT THE ONGOING EFFORTS BY ELIMINATING AS MUCH PAPERWORK AS POSSIBLE (E.G., THE DETERMINATIONS AND FINDINGS TO JUSTIFY COMPETITIVE NEGOTIATION), AND PROVIDING A SIMPLE, FLEXIBLE FRAMEWORK FOR THE CONTRACTING OFFICER, WHICH I BELIEVE H.R. 5184 INTENDS. THE CURRENT EXCEPTIONS UNDER WHICH NEGOTIATION IS AUTHORIZED SHOULD BE ELIMINATED, AND REPLACED BY A FIRM REQUIREMENT FOR COMPETITION, WITH SPECIFIC CONDITIONS OUTLINED UNDER WHICH NONCOMPETITIVE PROCUREMENTS WOULD BE PERMITTED. I BELIEVE THAT ANY LEGISLATION MUST PROVIDE A REASONABLE NUMBER OF CIRCUMSTANCES, SUCH AS THOSE CONTAINED IN OUR POLICY LETTER, AND IN THE ADMINISTRATION'S UNIFORM



FEDERAL PROCUREMENT SYSTEM PROPOSAL, UNDER WHICH NONCOMPETITIVE PROCUREMENTS CAN BE JUSTIFIED.

THE VISIBILITY WHICH THESE PROCUREMENTS WILL HAVE, BOTH THROUGH SYNOPSIS IN THE COMMERCE BUSINESS DAILY AND THROUGH CLEAR IDENTIFICATION IN THE FEDERAL PROCUREMENT DATA SYSTEM, WILL GIVE AGENCY MANAGERS THE TOOLS THEY NEED TO ENSURE THAT THE EXCEPTIONS FOR NONCOMPETITIVE PROCUREMENT ARE NOT BEING ABUSED.

IN SUMMARY, WE NEED STATUTORY CHANGE TO ACHIEVE OUR OBJECTIVES. WE AGREE WITH THE EMPHASIS IN YOUR BILL ON INCREASING COMPETITION AND CONTROLLING NONCOMPETITIVE PROCUREMENTS, BUT ARE CONCERNED THAT OTHER ASPECTS OF THE BILL MAY INTRODUCE UNNECESSARY COMPLEXITY AND PAPERWORK. YOUR BILL WOULD TIGHTLY CONTROL NONCOMPETITIVE PROCUREMENTS, WHICH IS DESIRABLE. HOWEVER WE BELIEVE THAT STATUTORY CHANGE SHOULD BE DESIGNED TO SIMPLIFY THE PROCUREMENT SYSTEM AND ELIMINATE PAPERWORK AS WELL. INSTEAD, H.R. 5184 MANDATES A COMPLEX AND CONFUSING SYSTEM OF REVIEWS AND APPROVALS WHICH WE BELIEVE WILL UNNECESSARILY IMPEDE THE ENTIRE PROCUREMENT PROCESS AND THEREFORE WE MUST RESPECTFULLY OPPOSE THE BILL AS CURRENTLY DRAFTED. WE WILL BE PLEASED TO WORK WITH THE COMMITTEE STAFF TO MEET THESE OBJECTIVES. WE WELCOME YOUR SUPPORT, MR. CHAIRMAN, AND THAT OF YOUR COMMITTEE, TO ACHIEVE REAL AND LASTING PROCUREMENT REFORM.

THE WHITE HOUSE

WASHINGTON

August 11, 1983

MEMORANDUM FOR THE HEADS OF DEPARTMENTS AND AGENCIES

SUBJECT: Competition in Federal Procurement

Competition is fundamental to our free enterprise system. It is the single most important source of innovation, efficiency, and growth in our economy.

Yet, far too often the benefits of competition are excluded from the Federal procurement process -- a process which now results in expenditures of over $160 billion annually. Numerous examples of waste and exorbitant costs due to the lack of competition have been detailed by the Congress and the press during recent months.

Although efforts have been initiated by this Administration through the Reform '88 Management Improvement Program to correct this longstanding problem, I am convinced that more needs to be done. Consequently, I have directed Don Sowle, the Administrator for Federal Procurement Policy in the Office of Management and Budget, to issue a policy directive on non-competitive procurement to all departments and agencies. That policy directive will establish government-wide restrictions on the use of noncompetitive procurement and will be reflected in the government's procurement regulations. While such congressionally mandated programs as contracting with minority firms and handicapped persons will not be affected, the unwarranted use of noncompetitive practices must and will be curtailed.

Pending the formal issuance of this new policy by the Administrator, I call upon each of you to assure that competition is the preferred method of procurement in your department or agency.

Ronald Reagan



Mr. BROOKS. Thank you, Mr. Sowle.

We appreciate your comments.

Mr. Horton.

Mr. HORTON. Thank you for coming, Don. As always, I appreciate your testimony.

Mr. SOWLE. Thank you very much, sir.

Mr. HORTON. Thank you very much.

Mr. BROOKS. We appreciate your coming.

Mr. Clinger.

Mr. CLINGER. No questions, Mr. Chairman.

Mr. BROOKS. We appreciate you all coming, and we welcome you back to the committee.

Mr. SOWLE. Thank you, sir.

Mr. BROOKS. And we will look at that next reauthorization and see if it really prohibits you from doing this, too.

Mr. SOWLE. I hope I don't have to go through it with you, sir.

Mr. BROOKS. Well, somebody will if they keep fighting this legislation so hard. We didn't have to reauthorize you. That took a little effort on our part. I didn't expect OFPP to come down here hammering away saying they couldn't do anything and they are doing it all perfectly because you and I know better than that.

Mr. SOWLE. But I really would like to reemphasize, Mr. Chairman, we do appreciate the support we have had from this committee——

Mr. BROOKS. We understand all that——

Mr. SOWLE [continuing]. And in the reforms——

Mr. BROOKS [continuing]. But I would like to rewrite your statement a little more affirmatively. If you appreciate it so much, why aren't you for us?

Mr. SOWLE. Thank you, sir.

Mr. BROOKS. It is all right.

Our next witness is Mr. O.S. Hiestand, who is representing the American Bar Association. He is now partner in the law firm of Morgan, Lewis & Bockius. He was formerly chairman of the public contract law section of the American Bar Association.

He is accompanied today by C. Stanley Dees, a member of the Public Contract Law Section Council.

Mr. Hiestand, we will accept your statement for the record. I am glad you support the protest section, and we will certainly consider some of your other technical suggestions as I think they have been fairly well thought out.

**STATEMENT OF O.S. HIESTAND, FORMER CHAIRMAN, PUBLIC CONTRACT LAW SECTION, AMERICAN BAR ASSOCIATION, ACCOMPANIED BY C. STANLEY DEES, MEMBER, PUBLIC CONTRACT LAW SECTION COUNCIL**

Mr. HIESTAND. Thank you, sir. We appreciate the opportunity to be here.

We are appearing at the request of Wallace B. Riley, the president of the American Bar Association, to express the ABA's views on H.R. 5184 on those provisions in the bill for which ABA has a position.