98TH CONGRESS
*2d Session*

HOUSE OF REPRESENTATIVES

REPORT
98-861

# DEFICIT REDUCTION ACT OF 1984

---

## THE COMMITTEE OF CONFERENCE

SUBMITTED THE FOLLOWING

## CONFERENCE REPORT

[To accompany H.R. 4170]

JUNE 23, 1984.—Ordered to be printed

---

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1984

35-426 O

DEPT. OF JUSTICE
DEC 23 1987
LIBRARY

The substitute requires the competition advocates to challenge barriers to, and promote full and open competition in, the procurement of property and services. Under the review and approval procedures established by the conference substitute, the procuring activities' competition advocates are responsible for approving all noncompetitive contract awards which involve expenditures exceeding $100,000 but less than $1,000,000. Further, the agency advocate is given the additional responsibilities of recommending to the agency's senior procurement executive (1) goals and plans for increasing competition on a fiscal-year basis, and (2) a system of personal and organizational accountability designed to encourage the procurement workforce to emphasize competition.

The conferees recommend that the performance ratings of procurement personnel include an appraisal of their efforts to promote competition in agency procurements.

### (4) Annual Report on Competition

*Senate amendment*

The Senate amendment requires the head of each executive agency to issue an annual report to Congress on the agency's use of competition in contracting. Specifically, the report should provide an overview of the actions taken by the agency to increase competitive contracting and reduce the number and dollar value of noncompetitive contracts, and the activities and accomplishments of the agency's advocate for competition.

*Conference substitute*

The conference substitute incorporates the annual report requirement from the Senate amendment and establishes January 31 as the deadline for submission to Congress for fiscal years 1986 through 1990.

### (5) Competition Requirement

*Senate amendment*

The Senate amendment has no comparable provision.

*Conference substitute*

The conference substitute amends Section 16(1) of the OFPP Act (executive agency responsibilities) to require the use of full and open competition in executive agency procurements of property and services. Language contained in this substitute requires agencies, when using competitive procedures, to establish policies, procedures, and practices necessary to ensure that a sufficient number of sealed bids or competitive proposals are received from responsible sources to fulfill the government's requirements (including performance and delivery schedules) at the lowest reasonable cost considering the nature of the property or services procured. This requirement applies to all agency procurements, including those made under set-aside programs.





## Subtitle D—Amendments to the Budget and Accounting Act

### Section 2751—Procurement Protest System

*Senate amendment*

The Senate amendment contains no provisions regarding the General Accounting Office bid protest system.

*Conference substitute*

The conferees believe that a strong enforcement mechanism is necessary to insure that the mandate for competition is enforced and that vendors wrongly excluded from competing for government contracts receive equitable relief. To accomplish this, the conference substitute adds a new subchapter to Chapter 35 of Title 31, United States Code, which codifies and strengthens the bid protest function currently in operation at the General Accounting Office (GAO). The provisions of this section become effective on Janaury 15, 1985.

The conference substitute establishes an enforcement mechanism keyed to the procedures contained in the Senate amendment for solicitation, notice, evaluation, and award. The procurement protest system further relies on record requirements in the Senate amendment, as expanded in the conference substitute, to insure the availability of information needed not only by the Comptroller General to make determinations in procurement protests, but also by interested parties to identify, and initiate action against, solicitations and awards which they believe are unlawful.

The Comptroller General is not given exclusive authority to hear protests. The conferees do not intend, for example, that the GAO decide matters dealing with the Small Business Administration's responsibilities under the Small Business Act to establish industry size standards or to issue Certificates of Competency to small businesses. Finally, interested parties with recourse to the General Services Administration Board of Contract Appeals in disputed computer procurements may not protest the same action to both the GAO and the GSA board.

Any actual or prospective bidder of offeror whose direct economic interest would be affected by the award of or failure to award a procurement contract by an executive agency may challenge the agency's solicitation, award or proposed award by filing a protest with the Comptroller General. Final agency determinations under section 307 of the Federal Property and Administrative Services Act and section 2310 of title 10, United States Code, may be the subjects of protests to GAO, the courts, and where appropriate, the GSA board.

Once a protest has been filed with GAO, the Comptroller General shall notify the executive agency involved within one day of receipt of the protest. The executive agency then has 25 working days (10 if the Comptroller General selects the "express option") to respond. the Comptroller General must issue his opinion within 90 working days (45 calendar days under the express option). The Comptroller General may extend the deadlines when appropriate for specific protests, on a case-by-case basis; the conferees regard

such extensions as exceptional, however, and to be used in unique circumstances only.

If, when a protest is filed, the contract in question has not yet been awarded, an award may not be made unless the head of procuring activity responsible finds and reports to the Comptroller General that urgent and compelling circumstances which significantly affect the interests of the United States will not permit awaiting the Comptroller General decision. (This finding may be made only if the award is likely to occur within 30 calendar days.) If a protest is filed within 10 days after award of the contract, performance shall cease and all related activities which may result in additional obligations being incurred by the United States must be suspended, unless the head of the procuring activity informs the Comptroller General that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the Comptroller General's decision, or that performance of the contract is in the best interest of the United States.

Before notifying the Comptroller General that continued performance of a disputed contract is in the government's best interest, however, the head of the procuring activity should consider potential costs to the government from carrying out relief measures as may be recommended by the Comptroller General if the protest is subsequently sustained. This is to insure that if the Comptroller General sustains a protest, such forms of relief as termination, recompetition, or re-award of the contract will be fully considered for recommendation. Agencies in the past have resisted such recommendations on the grounds that the government's best interest would not be served by relief measures of this sort because of the added expenses involved. This provision is designed to preclude that argument in the future, and thus to avoid prejudicing those relief measures in the Comptroller General's review.

If the Comptroller General determines that a protested procurement action has involved government non-compliance with statutes or regulations, the Comptroller General is required to recommend corrective action to the executive agency responsible, and the head of the procuring activity involved must notify the Comptroller General if the agency has not implemented the recommendations within 60 calender days. This provision does not preclude the Comptroller General from requesting the agencies to notify the GAO of the status of any other recommendation. An annual report of all notifications received by the Comptroller General, describing each instance of non-implementation, must be submitted to Congress.

The Comptroller General may grant to a successful protesting party reimbursement for expenses of preparing bids or proposals related to the disputed contracting action and for costs incurred in making the protest. These costs shall be paid from the procurement funds (not necessarily funds for the specified procurement which was challenged) of the executive agency involved.

The conference substitute provides that the Comptroller General may dismiss at any point in the process a filing determined to be frivolous or to lack a valid basis for protest. This provision reflects the intent of the conferees to keep proper contract awards or due





performance of contracts from being interrupted by technicalities which interested parties in bad faith might otherwise attempt to exploit. Finally, the conferees expect that the Comptroller General will declare monetary awards only in cases where the agencies have unfairly excluded vendors from procurements, and not in cases involving minor technicalities.

The Comptroller General currently receives from courts and agencies requests concerning the propriety of procurements. The conferees intend that the Comptroller General have the discretion to continue to process these requests in a manner consistent with the one used for bid protests.

The conference substitute also includes a section regarding alternative remedies. The subchapter regarding bid protests does not alter the current rights of any person to seek administrative or judicial review of any alleged violation of a procurement statute or regulation. Further, documents related to a Comptroller General's decision on a procurement and the agency's response to such decision must be made a part of the agency record and be made available to the courts in the event a suit is filed against the agency involving the procurement.

### Subtitle E—Effective Date: Regulations; Study

### Section 2751—Effective Date

*Senate amendment*

The Senate amendment applies to any solicitations for bids or proposals issued on or after the date 270 days after enactment.

*Conference substitute*

The conference substitute establishes April 1, 1985, which is approximately 270 days from the anticipated date of enactment, as the effective date. The substitute also establishes January 15, 1985, which allows approximately 180 days for implementation, as the effective date for the bid protest provision.

### Section 2752—Modification of the Federal Acquisition Regulation

*Senate amendment*

The Senate amendment has no comparable provision.

*Conference substitute*

The conference substitute requires that the Federal Acquisition Regulation (FAR) shall be modified by March 31, 1985, to conform to the requirements set forth in this substitute. Modification shall also be made to the FAR within this time period to reflect policy directives issued by the Office of Federal Procurement Policy.

The conferees note with considerable concern that the system established to maintain the FAR is not working. Presently, FAR maintenance is jointly vested in two procurement regulatory councils, the Defense Acquisition Regulatory (DAR) Council, established by the Secretary of Defense, and the Civilian Agency Acquisition Council (CAAC), established pursuant to the FAR. Under the maintenance procedures prescribed by the FAR, both councils must con-