**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-599C |
| | ) | (Judge Marion Blank Horn) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DIGITAL TECHNOLOGIES, INC.'S SUBMISSION RE LEGISLATIVE HISTORY OF 31 U.S.C. § 3353(D)(3)(C)(I)(I)**

Intervenor Digital Technologies, Inc. ("DTI") hereby respectfully submits its commentary on the legislative history of the phrase "is in the best interests of the United States" contained in 31 U.S.C. § 3353(d)(3)(C)(i)(I) (the "Best Interests Provision").

The Best Interests Provision was added as Section 1402 of Pub. L. 103-55, the Federal Acquisition Streamlining Act of 1994. Although the legislative history of this enactment does not expressly address the Best Interests Provision, it does address a closely related provision in the same subsection and therefore ought to be considered equally applicable. That legislative history focuses on creating a process in which agency procurement officials are given broad discretion to avoid incurring costs where an automatic stay is anticipated. With respect to that

sister provision to the Best Interests Provision, Senate Report No. 103-258 states that what became 31 U.S.C. § 3353(d)(2)[1]:

> would permit contractors to begin performance unless the contracting officer withholds an authorization to proceed with performance in the first ten days after contract award. A contracting officer could withhold authorization if he or she felt that a bid protest was likely and that immediate performance would not be in the best interest of the United States. The provision is intended to avoid adding costs to the United States from starting, stopping, and restarting contract performance in cases where protests are considered likely and immediate performance is not necessary.

5 U.S. Cong. and Admin. News 2620-21 (1994).

It logically follows from Congress' focus on costs in the context of granting the contracting officer the discretion to *delay* an awardee's performance that the same focus on costs from starting, stopping and restarting applies in the obverse situation covered by the Best Interests Provision. Where, as in this case, the agency makes the determination that immediate commencement of performance by the successful offeror would not result in added costs to the United States if the unsuccessful offeror's protest is upheld and would save the United States $100,000 per month, that determination is within the intent of the Best Interests Provision.

In the instant case, given the previous history of DTI and Plaintiff Automation Technologies, Inc. ("ATI") in the performance of this contract, there are no added costs to the

[1] 31 U.S.C. § 3353(d)(2) (1994) provided:

> The contracting officer may withhold an authorization to proceed with performance of the contract during the period described in paragraph (4) if the contracting officer determines in writing that—
>
> (A) a protest is likely to be filed; and
>
> (B) the immediate performance of the contract is not in the best interests of the United States.

103 STAT. 3288.

United States of the kind that Congress was concerned with. There is no evidence in the record before the Court to contrary. DTI is ready, willing and able to begin performance on September 1, 2006, with less than 1 day's prior notice. The Government's ability to switch contractors from one day to the next underscores the absence of any added costs to the Government no matter how ATI's bid protest is ultimately resolved.

Notwithstanding the very limited legislative history of the Best Interests Provision, three additional facts bear directly on its meaning. The first is that prior to 1994 when the Best Interests Provision was enacted, the only circumstance in which the automatic stay could be overridden was "upon a written finding that urgent and compelling circumstances which significantly affect the interests of the United States will not permit waiting for the decision of the Comptroller General" on the protest. 31 U.S.C. § 3353(C)(2)(A) (1984). Plainly, Congress concluded that this was too restrictive and that agencies needed the authority to override automatic stays in other than "urgent and compelling circumstances". Hence, the enactment of the Best Interests Provision in 1994.

The second fact that bears on the meaning of the Best Interests Provision is the breadth of the discretion vested in agency procurement officials to make the determination as to what constitutes the best interests of the United States in a given situation, with the only stated factor in the legislative history to be cost savings to the United States. Furthermore, it would be incorrect to look to the legislative history of the enactment of the "urgent and compelling" provision as guidance to review the instant decision of the Bureau of Customs and Border Protection of the United States Department of Homeland Security to override the automatic stay (the "Override Decision") because it was expressly made under the Best Interests Provision. Indeed, to do so would be error because the Best Interests Provision self-evidently is not only

much less restrictive than the "urgent and compelling" provision, but also Congress deliberately chose language that it uses when it seeks to vest maximum discretion in agency officials.

Indeed, the third fact is that the specific language Congress employed in the Best Interests Provision also appears in other procurement statutes, which supports the conclusion that it was Congress' intent to vest in agency procurement officials the very broad discretion the words in the Best Interests Provision imply.

For example, in 1986, Congress passed 10 U.S.C. § 2326, which provides in relevant part:

> **Undefinitized contractual actions; restrictions**
>
> a) In General. - The head of an agency may not enter into an undefinitized contractual action unless the request to the head of the agency for authorization of the contractual action includes a description of the anticipated effect on requirements of the military department concerned if a delay is incurred for purposes of determining contractual terms, specifications, and price before performance is begun under the contractual action.
>
> * * *
>
> (c) Inclusion Of Non-Urgent Requirements. - Requirements for spare parts and support equipment that are not needed on an urgent basis may not be included in an undefinitized contractual action for spare parts and support equipment that are needed on an urgent basis unless the head of the agency approves such inclusion as being
>
> (1) good business practice; and
>
> (2) in the best interests of the United States.
>
> (d) Modification Of Scope. - The scope of an undefinitized contractual action under which performance has begun may not be modified unless the head of the agency approves such modification as being –
>
> (1) good business practice; and
>
> (2) in the best interests of the United States.

Similarly, in 1993, Congress passed 10 U.S.C. § 2813, which provides in relevant part:

> **Acquisition of existing facilities in lieu of authorized construction**
>
> * * *
>
> (b) Modification Or Conversion Of Acquired Facility. - (1) As part of the acquisition of an existing facility under subsection (a), the Secretary of the military department concerned may carry out such modifications, repairs, or conversions of the facility as the Secretary considers to be necessary so that the facility satisfies the requirements for which the military construction project was authorized.
>
> (2) The costs of anticipated modifications, repairs, or conversions under paragraph (1) are required to remain within the authorized amount of the military construction project. The Secretary concerned shall consider such costs in determining whether the acquisition of an existing facility is -
>
> (A) more cost effective than carrying out the authorized military construction project; and
>
> (B) in the best interests of the United States.

While all parties agree that the Override Decision is subject to judicial review, *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1291 (Fed. Cir. 1999), the above facts lead to the conclusion that the scope of the Court's review of a decision made under the Best Interests Provision is very limited because the breadth of the discretion vested in the agency is so broad. *See, e.g., Adams v. United States,* 810 F.2d 1142, 1143-44 (Fed. Cir. 1987):

> On the merits, we also agree with the Claims Court. "Prevailing rates" wage legislation like [5 U.S.C.] § 5349, *supra* – with its express reference to adjustment "from time to time as nearly as is consistent with the public interest" – bestows "a broad congressional grant of administrative discretion." *Benvenuto v. United States,* 198 Ct. Cl. 772, 461 F.2d 11316, 1320 (1972). The administrative determination can only be set aside for abuse of discretion, (*National Maritime Union v. United States, supra*, 682 F.2d at 955) or because it is "so arbitrary as to be clearly wrong." *Baratt v. United States, supra*, 585 F.2d at 1045.

*Accord*, *Doty v. United States,* 53 F.3d 1244, 1250 (Fed. Cir. 1995) ("A discretionary ruling must implement the statutory purpose and must have a rational basis in the record.").

More recently, in *KSEND v. United States*, 69 Fed. Cl. 103, 109 (2005), this Court held:

> Under the arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts.

The Override Decision is consistent with the intent of Congress as expressed in the legislative history and therefore legally permissible. Moreover, saving $100, 000 per month, which is supported by the facts in the administrative record, is neither arbitrary nor an abuse of the broad congressional grant of agency discretion and certainly in the best interests of the United States. For these reasons, and for the reasons previously provided, ATI's application for a TRO should be denied.

Respectively submitted,

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6802
202-776-2726

Counsel for Intervenor
Digital Technologies, Inc.

Dated: August 29, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing to be delivered by electronic means, on this 29th day of August 2006, to the following counsel:

Roger A. Hipp, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

Walter F. Zenner, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, Virginia 22102-4859

Leslie H. Wiesenfelder