# In the United States Court of Federal Claims

* * * * * * * * * * * * * * 

**AUTOMATION TECHNOLOGIES, INC.,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**DIGITAL TECHNOLOGIES, INC.,**

**Defendant-Intervenor.**

* * * * * * * * * * * * * * 

**No. 06-599C**
**Filed: September 11, 2006**
**Unsealed: September 21, 2006[1]**

## O R D E R

Plaintiff Automation Technologies, Inc. (ATI) filed an August 22, 2006 complaint challenging an agency override of the automatic stay stemming from a Government Accountability Office (GAO) bid protest. The complaint was accompanied by requests for a temporary restraining order and a preliminary injunction. The complaint seeks a declaratory judgment holding that the agency's decision to override the stay is arbitrary, capricious, or otherwise not in accordance with law, a reinstatement of the stay, and permanent injunctive relief. Defendant and intervenor filed responses on August 25, 2006, and the court held a hearing on August 28, 2006. At the August 28, 2006 hearing, the agency indicated that it intended to issue task orders and proceed with the awardee and intervenor, Digital Technologies, Inc. (DTI), on September 1, 2006. The court issued a bench ruling on the propriety of the override, in favor of the plaintiff on August 31, 2006, the same day that task orders issued to the plaintiff, which was the incumbent on the contract, would have expired. This Order memorializes the bench ruling.

---

[1] This Order was issued under seal on September 11, 2006, to afford the parties an opportunity to propose redactions. No redactions were proposed. The Order was, therefore, unsealed and re-issued on September 21, 2006.

The United States Customs and Border Protection (Customs) agency, part of the Department of Homeland Security, solicited proposals for computer maintenance services. Plaintiff ATI, intervenor DTI, and a third offeror, Signature Technology Group, Inc. (STG), submitted proposals. The technical evaluation score for ATI was higher than DTI's score, 85 percent to 76 percent.[2] In this initial evaluation, ATI's price was lower than DTI's price. Customs awarded the contract to ATI on January 4, 2006. On January 11, 2006, DTI filed a protest with the GAO (Comp. Gen. B-297851). An automatic stay of the award to ATI stemmed from the GAO protest, pursuant to 31 U.S.C. § 3553(d)(3)(A) (2000). A Customs official, however, determined that it was in the "best interests of the United States" to override the automatic stay pursuant to 31 U.S.C. § 3553(d)(3)(C)(i)(I), permitting ATI to proceed with the contract.

DTI proceeded with this earlier protest. Upon hearing that the GAO believed improper discussions may have taken place, Customs took corrective action and, as a result, the protest was dismissed by the GAO on March 23, 2006. The agency's corrective action included an amendment of the solicitation, submission of revised price proposals by ATI, DTI, and STG, and a new source selection decision. Since only price proposals were re-submitted, the technical submissions and scores remained the same from the earlier evaluation. However, DTI was the lower bidder this time compared to ATI. According to Customs' June 28, 2006 Price Negotiation Memorandum:

> The solicitation stated that between competing proposals, the Government is not willing to pay *significantly more for a minor difference in the non-cost or price factors rating*, nor is the Government willing to forego a significant difference in the non-cost or price factors rating in exchange for a small cost/price differential.
>
> * * *
>
> CPB [Custom and Border Protection] is unwilling to pay 17% more than DTI's offered price to obtain a 9 percentage point increase in technical scoring, particularly when DTI has provided this service to CBP in the past at an acceptable performance level.

(emphasis in original).

---

[2] Customs' December 29, 2005 Price Negotiation Memorandum stated that the technical evaluation score for DTI was 75 percent. However, Customs' June 28, 2006 Price Negotiation Memorandum indicates that a mathematical error was made in the earlier evaluation, and that DTI's technical evaluation score should have been 76 percent. The June 28, 2006 Price Negotiation Memorandum also noted that the technical scores might have been even closer: "Although ATI's technical proposal identified their agreement with the OEM [Original Equipment Manufacturer] Fujitsu as exclusive, DTI supplied a letter signed by Fujitsu indicating that Fujitsu is prepared to enter into an OEM agreement with DTI. Had this information been available to the SEB [Source Evaluation Board], it would likely have had an impact on the evaluation."

On August 4, 2006, Customs made an award to DTI on the amended solicitation. On August 11, 2006, ATI filed a bid protest with the GAO (Comp. Gen. B-298618). The GAO decision was expected by November 20, 2006.[3] An automatic stay went into effect pursuant to 31 U.S.C. § 3553(d)(3)(A).

On August 17, 2006, a Customs official executed a Determination and Findings (D&F) to override the automatic stay. The D&F was based on an evaluation of the GAO protest, which concluded that the protester, ATI, will lose the protest:

> The protest matter pertaining to the cost/technical tradeoff is without merit since the tradeoff analysis was well documented as shown on pages 7-8 of the attached Price Negotiation Memorandum (PNM) and strongly supported the award decision. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in the technical/past performance scores.
>
> Although the awardee's pricing will result in significant cost savings to the Government, the protest basis pertaining to unrealistically low CLIN [contract line item number] pricing (CLINs 0002 and 0010 in particular) is unfounded. The protestor states simply that the awardee does not understand the Government's requirements. CLIN pricing offered by the protestor and the awardee is shown in the PNM. As to downgrade of the awardee's offer for poor past performance, the protestor is unaware that CBP/OIT [a Customs entity] was used as a past performance reference by the awardee, and the awardee received the highest possible past performance rating from CBP/OIT.
>
> The portion of the protest pertaining to the technical evaluation/scoring will be resolved against the protestor, since the protest is now untimely. Technical scoring for all offerors was released with Amendment No. 0004 on April 6, 2006.

---

[3] Although the GAO is given 100 days, by statute (31 U.S.C. § 3554(a)(1)), to issue a final decision on a protest, and at the hearing the parties indicated that the GAO's decision was anticipated on November 20, 2006, the GAO delivered its decision earlier, on September 6, 2006, in a short opinion dismissing ATI's protest on the grounds that ATI had not been prejudiced, because it "already holds a contract for the requirement, [and] there is no additional remedy available to it . . . ." Comp. Gen. Dec. B-298518, B-298518.2, slip op. at 2 (Sept. 6, 2006). The GAO decision does not alter the court's prior, August 31, 2006, final, bench ruling on the agency override, or this Order memorializing the court's bench ruling.

The D&F then concluded that it was in the "best interests of the United States" to proceed with the award to DTI, because significant cost savings would result. Customs estimated that $103,196.27 per month could be saved by issuing task orders to DTI on September 1, 2006.

The Automatic Stay

Automatic stays of the procurement were instituted for both of the protests discussed above, the first one by DTI, and the second one, the propriety of the override of which is before this court, filed by ATI. The automatic stay is statutory:

> (A) If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)–
>
> (i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or
>
> (ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.
>
> (B) Performance and related activities suspended pursuant to subparagraph (A)(ii) by reason of a protest may not be resumed while the protest is pending.

31 U.S.C. § 3553(d)(3)(A), (B).

The Agency Override

On August 17, 2006, Customs notified the GAO, which was considering ATI's protest, that the agency was overriding the automatic stay. The override authority is found in the same GAO bid protest legislation that provides for the automatic stay:

> (C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section) –
>
> (i) upon a written finding that –
>
> (I) performance of the contract is in the best interests of the United States; or

> (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
>
> (ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C).

On August 17, 2006, the "head of the procuring activity," Customs' Executive Director of Procurement, John H. Ely, signed a Determination and Finding (D&F), constituting the statute's "written finding" to support an override of the stay. 31 U.S.C. § 3553(d)(3)(C)(i). As noted above, the agency's D&F first evaluated the basis for ATI's protest before the GAO, and concluded that ATI's charges were without merit and would not succeed. Before the GAO, ATI is challenging the agency's tradeoff analysis (comparing the technical evaluation, past performance, and price analysis). The solicitation stated that Customs would award the contract on a "best value" basis. The evaluation factors were technical, past performance, and price, in descending order of importance. According to the solicitation, technical factors were "significantly more important" than past performance, and past performance was "significantly more important" than price. The solicitation stated that: "The Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price."

ATI's technical/past performance score was 85 percent, compared to DTI's lower 76 percent score. ATI's evaluated price (including options), however, was $6,872,902.44 higher than DTI's price (ATI's price: $46,635,300.00 compared to DTI's price: $39,762,397.56). Customs' D&F concluded that its tradeoff analysis was appropriate, that "the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores."

ATI also is protesting before the GAO that DTI's CLIN (contract line item numbers) pricing is unrealistically low, particularly the pricing of CLINs 0002 and 0010. ATI argues that the CLIN pricing is so low as to reflect a poor understanding on the part of DTI of solicitation requirements. Customs' D&F disagrees and, to the contrary, wants to take advantage of DTI's lower costs, particularly since DTI has performed acceptable work for Customs in the past, according to Customs' June 28, 2006 Price Negotiation Memorandum on the competition for the amended solicitation.

ATI also is arguing before the GAO that DTI's offer should have been downgraded for poor past performance. Customs' D&F noted that ATI was unaware that a Customs office gave DTI the highest possible past performance rating. In addition, before the GAO, ATI alleges that the technical evaluation of ATI was unreasonable, even though ATI's technical/past performance score was higher than DTI's score. Customs' D&F concluded that ATI's challenge on the technical evaluation will be resolved against ATI because the

protest on this ground was untimely. Therefore, Customs' D&F concludes that the GAO protest will not succeed.

Customs' D&F also notes that overriding the stay and proceeding with the contract "will result in significant savings to the Government, and therefore is in the best interests of the United States." The D&F lists the savings over the potential five-year period of the contract, ranging from a projected savings of $103,198.27 per month in the first year to a high of $118,330.98 per month in the fourth year. The D&F, therefore, relies exclusively on the statutory criteria that, in spite of the protest, proceeding with the "performance of the contract is in the best interests of the United States," and does not implicate the alternative basis for override, "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General...." 31 U.S.C. § 3553(d)(3)(C)(i)(I), (II).

Jurisdiction

The issue ATI brings before this court is the propriety of the agency's override of the automatic stay resulting from the GAO protest, not the merits of the solicitation process. The United States Court of Appeals for the Federal Circuit has determined that the Court of Federal Claims possesses jurisdiction over agency override decisions, even when there is a concurrent, pending bid protest before the GAO. The issue of this court's jurisdiction was addressed by the United States Court of Appeals for the Federal Circuit in RAMCOR Services Group, in which the Circuit Court found that the Court of Federal Claims had jurisdiction to review an override based on urgent and compelling circumstances in a pre-award case. RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1289-91 (Fed. Cir. 1999); see also Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. 25, 29 (2006) (the Court of Federal Claims has jurisdiction to review an override based on the best interests of the United States); PGBA, LLC v. United States, 57 Fed. Cl. 655, 658-660 (2003) (the Court of Federal Claims has jurisdiction to review an override based on both the best interests of the United States and urgent and compelling circumstances, as provided in the Competition in Contracting Act (CICA)).

Standard of Review

The court's role is to determine if the override was based on "a consideration of the relevant factors and whether there has been a clear error in judgment" by the agency. Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 30 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). The court's role is to determine if the agency relied on factors Congress did not intend for the agency to consider; failed entirely to consider an important aspect of the problem; offered an explanation for its decision which is not supported by the evidence before it; or, whether the agency's decision is simply too implausible. Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 30 (citing Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Basically, the court must determine whether the agency "considered the relevant factors and made a rational decision based on those factors."

Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 30 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000)).

The Override

In the D&F in support of the override, Customs stated that the override was based on "significant savings to the Government, and therefore is in the best interests of the United States." ATI argues that Customs' override decision was arbitrary, capricious, and contrary to law because, as acknowledged by defendant, it was based, solely and exclusively, on projected cost savings if DTI were to proceed under the contract immediately. In this regard, ATI points to case authority which has rejected cost savings as a basis to support an override of an automatic stay.

In the first case plaintiff cites, PGBA, the agency's override was enjoined. PGBA, LLC v. United States, 57 Fed. Cl. 655, 664 (2003). The critical basis for the agency's override in PGBA was a four-month slippage in the implementation of a health care program for military retirees and their families, absent the override. Id. at 661. The court, however, rejected the agency's assumption that a harmful slippage would inevitably occur. Id. The record in the case indicated to the court that some if not all of the anticipated slippage could be made up. Id. The agency in PGBA also had estimated that the four-month slippage would cost about $21.1 million. Id. The court concluded that this figure assumed the four-month delay, which was called into question, and included regions not due to become operational immediately, whereas if only one region were delayed, perhaps only 2 percent, or about $100,000.00 per month would be lost without the override. Id. at 661-62. Customs' D&F in the present case estimates that proceeding with task orders under the DTI contract, rather than awaiting the GAO's decision, would save $103,198.27 per month. This is about the same cost savings deemed insufficient to support an override by the court in PGBA.

The court in PGBA identified a factor that the agency did not but should have considered:

> Moreover, the Director [of Acquisition Management and Support] did not diminish the cost savings associated with his override decision by an amount corresponding to the risk that the protest would be sustained and the agency would be forced to reimburse WPSI [Wisconsin Physicians Service Insurance Corp.] for reasonable costs incurred during what would have been the stay period. The Director made no effort to quantify these costs, assuming instead either that the GAO protest would be denied, or that if sustained, WPSI would continue to perform. In the court's view, the Director thus appears all but to have ignored a variable that should have been an important aspect of his cost evaluation calculus.

PGBA, LLC v. United States, 57 Fed. Cl. at 662 (footnote omitted but discussed immediately below). As in PGBA, the posture of Customs in its override D&F was that the protest would be denied. The D&F in the case before this court also does not address the

ramifications of a loss in the GAO protest. Yet, as noted by the court in PGBA, there was an indication in the Conference Report accompanying CICA that this is a factor which should be considered:

> Before notifying the Comptroller General that continued performance of a disputed contract is in the government's best interest, however, the head of the procuring activity should consider potential costs to the government from carrying out relief measures as may be recommended by the Comptroller General if the protest is subsequently sustained. This is to insure that if the Comptroller General sustains a protest, such forms of relief as termination, re-competition, or re-award of the contract will be fully considered for recommendation. Agencies in the past have resisted such recommendations on the grounds that the government's best interests would not be served by relief measures of this sort because of the added expenses involved. This provision is designed to preclude that argument in the future, and thus to avoid prejudicing those relief measures in the Comptroller General's review.

PGBA, LLC v. United States, 57 Fed. Cl. at 662 n.11 (quoting H.R. Conf. Rep. No. 98-861, at 1436 (1984)).

The court in PGBA also noted that the current contract could be extended to provide the services needed. PGBA, LLC v. United States, 57 Fed. Cl. at 662. The same is true for the present case. In PGBA, as in the present case, this left only the agency rationale for the override "that the new contracts will provide better and more efficient services ...." Id. The court in PGBA, as does this court, found such a rationale insufficient.

> [W]ithout more, the court does not believe that the mere fact that the new contracts would be better than the old is enough to support the override decision under either prong of section 3553. . . . [W]ere the fact that a new contract is better than the old sufficient for this purpose, little would be left of Congress' efforts in CICA to strengthen the stay provisions and, with that, promote the integrity of the GAO review process. . . . [T]he best interests of the"United States" must be involved and those interests necessarily include weighing the benefits Congress obviously felt were furthered by bolstering the bid protest process and, in turn, promoting competition in contracting.

PGBA, LLC v. United States, 57 Fed. Cl. at 662-63.

This court, however, does not conclude that cost savings and other improvements can never be a sufficient basis to support an override. Override cases are necessarily fact dependent. Customs' estimated $103,196.27 per month cost savings, between September 1 and November 20, 2006, in the context of an anticipated five-year, $49,500,00.00 contract, with options, is an insufficient basis to support an override, given the other facts of the case before the court.

ATI also cites the University Research case, in which the agency's override decision was enjoined as unreasonable, as in PGBA. Univ. Research Co., LLC v. United States, 65 Fed. Cl. 500, 503 (2005). The May 23, 2005 University Research opinion addresses the bid protest itself, and not the agency override, but does briefly describe the court's earlier bench ruling enjoining the override, which concluded that the rationale for the override was unreasonable. Id. The court in University Research cited the agency's determination that the "best value" could be obtained by proceeding with the award in spite of the protest. Id. The court noted that if best value were sufficient to support an override, "as a practical matter, the automatic stay would be meaningless in virtually every single instance in which a GAO protest was filed. Almost invariably when a contract is awarded through a competitive process, the award will be based on the awardee offering the government the best value, and in many cases this also means the contract will cost the government less money." Id. (citation omitted). The solicitation in the present case also is a "best value" procurement.[4] As in both PGBA and University Research, a factor in the review of an override decision must be a balancing of considerations to assess reasonableness, including the impact on the competition in contracting and bid protest processes.

ATI also cites to the CIGNA case, in which the court enjoined an agency override. CIGNA Gov't Servs., LLC v. United States, 70 Fed. Cl. 100, 114 (2006). In CIGNA, the override decision was primarily based on the rationale that a stay would delay the implementation of an improved Medicare claims processing system, resulting in $5 million in cost savings and enhanced performance. Id. at 111. The court found, however, that the agency used this delay-based justification for the override, but told Congress a different story, completely undercutting the basis for the override. Id. Nor did the court accept the figure of $5 million in cost savings, since that figure related to a full year and not just the period of delay until the GAO decision, and reflected savings for all regions and not just those regions impacted by the override. Id. at 113. The court in CIGNA concluded that the prospect of proceeding with an improved contract, which would enhance services and provide efficiencies over the prior contract, was insufficient support for a best interests override. Id. (citing and quoting Chapman Law Firm Co. v. United States, 62 Fed. Cl. 464, 466 (2004) ("Normally the fact that a new contract is better than an old contract would not constitute a valid basis for an override decision.")).

ATI also cites to the case of Advanced Systems Development, in which the agency's override was rejected and the automatic stay reinstated. Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 37. The court in Advanced Systems Development followed the lead of PGBA and University Research, stating that:

[4] The solicitation in the present case defines best value "as the procurement process that results in the most advantageous acquisition decision for the Government and is performed through an integrated assessment and trade-off analysis between cost or price and non-cost or [non-]price factors (i.e., technical evaluation factors and past performance)[."]

> The allegation that the new contract is better than the old one in terms of cost or performance is not enough to justify a best interests determination. PGBA, 57 Fed. Cl. at 662. Indeed, it will almost always be the expectation that the new contract will be an improvement over the old. Id. at 663. To allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic. Id.; accord Univ. Research Co. v. United States, 65 Fed. Cl. 500, 503 (2005).

Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 31.

The override was not sustained in the above cases. However, cases in which an override was sustained are distinguishable from the present case, and similarly instructive. For example, in the Alion case, the agency had time-critical work, and a single contractor with qualified personnel to perform the work. The override, justified under both the "best interests of the United States" and urgent and compelling circumstances, was sustained as reasonable. Alion Sci. and Tech. Corp. v. United States, 69 Fed. Cl. 14, 25, 27, 29 (2005). In the Chapman case, the override was necessary to permit the incumbent to perform critical services. Without the override, the agency estimated it would lose $3 million per month, and that government properties would be unmanaged and subject to vandalism. To prevent financial losses and protect the public safety, the agency's "best interests of the United States" determination was upheld by the court. Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188, 192 (2005). In the Spherix case, without the override, the agency would suffer a year-long delay in a critical program, and the system would not be operational during the critical season when it was needed. Spherix, Inc. v. United States, 62 Fed. Cl. 497, 506-07 (2004). The agency's best interests determination was upheld by the court. Id. at 508.

As indicated by review of cases decided for and against an override, override cases are fact specific. In the present case, the court concludes that while cost savings may be sufficient to support an override in the proper case, this is not that case. Moreover, an agency's discretion is not unfettered, but constrained by a consideration of relevant factors, including the ramifications of an agency loss in the GAO protest, and the impact of an override on the competition in contracting and bid protest processes, as well as respect for the GAO, an important component in the statutory structure of how to address protests to government procurement actions. The ability to extend a contract, or, in this case, to add task orders to a contract, without difficulty, through December, 2006, in order to perform the critical computer maintenance work, is another important factor, coupled with the fact that both the plaintiff and the intervenor have performed this work in the past. Reviewing the rationale in the agency's D&F, and weighing the above factors, the court has concluded that, given the record before the court, the agency override was unreasonable.

On August 31, 2006, the court **GRANTED** the plaintiff's request for a declaratory judgment.[5] The override decision issued by Customs is declared to be unreasonable, arbitrary and capricious and invalid. The override decision is set aside, and the automatic stay stemming from ATI's GAO protest is reinstated. The clerk's office shall enter **JUDGMENT** for the plaintiff in accordance with this Order.

The court held a conference with the parties on September 7, 2006, the day following the GAO's issuance of its decision dismissing ATI's protest. As discussed with the parties at that conference, ATI is considering asking the GAO to reconsider its September 6, 2006 decision and/or filing a complaint on the merits of the solicitation process in this court. If ATI should file a new complaint on the August 4, 2006 award by Customs to DTI in this court, the clerk's office shall waive the filing fee and assign the complaint to the undersigned judge. Any such filing by ATI should cite and draw the attention of the clerk's office to this paragraph.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[5] ATI has requested both declarative and injunctive relief. The court, above, has granted ATI's request for declaratory judgment, and declared Customs' override to be invalid, resulting in a reinstatement of the stay. See 28 U.S.C. § 1491(b)(2) (2000) (providing for declaratory relief). As the court stated in CIGNA Government Services:

> Because the declaratory judgment will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of injunctive relief. In so ruling, the Court has taken into account the necessity of resolving this matter expeditiously recognizing that each day that passes prolongs the time when the stay is not in effect.

CIGNA Gov't Servs., LLC v. United States, 70 Fed. Cl. at 114; accord Advanced Sys. Dev., Inc. v. United States, 72 Fed. Cl. at 36-37; Chapman Law Firm Co. v. United States, 65 Fed. Cl. 422, 424 (2005).